Filed 5/7/14  P. v. Simmons CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057015 |
| v. | (Super.Ct.No. FWV1101735) |
| THADDUS CORNELL SIMMONS, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Michael A. Sachs, Judge.  Affirmed in part and reversed in part with directions.

Laurel M. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, and Lilia E. Garcia, and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

Defendant and appellant, Thaddus Cornell Simmons, a parolee, was sitting in a park when Ontario Police Officer Michael Gonzales approached him to conduct a parole search. When Officer Gonzales learned that there was an outstanding "parolee at large" warrant for defendant, he called for backup to help arrest defendant. In the meantime, the officer and defendant became embroiled in a violent, physical altercation that involved the use of the officer's Taser and baton. After Officer Nicolas Larraga arrived, defendant was subdued.

Defendant was charged under Penal Code section 69 with two counts of resisting an executive officer. Defendant asserted the arrest was unlawful and that the officers used excessive force. To support this defense, defendant filed a so-called *Pitchess*[1] motion to discover information pertaining to the arresting officers. The court denied the motion without making an in camera inspection of any requested material.

A jury convicted defendant of the count of resisting Officer Gonzales and acquitted him of the count as to the second officer. In a bifurcated bench trial, the court found true certain sentence enhancement allegations. Defendant was sentenced to an aggregate term of seven years.

On appeal, defendant contends the court erred in denying his *Pitchess* motion and that the conviction for resisting arrest is not supported by substantial evidence. We agree with defendant that the court erred by failing to conduct an in camera review of the

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

records sought by defendant and will conditionally reverse the judgment on that basis. We reject defendant's sufficiency of the evidence argument.

## II.  SUMMARY OF EVIDENCE ADDUCED AT TRIAL

The defense did not offer any affirmative evidence at trial.  Our summary of the evidence at trial is therefore based primarily on the testimony of Officers Gonzales and Larraga.

On a June morning in 2011, defendant was sitting on a blanket near a tree in a park.  There were children playing in the park about 50 yards away.  Defendant was relaxed and not bothering anyone.

Officer Gonzales was on patrol when he saw defendant in the park.  He knew defendant had been on active parole status within the preceding year.  Officer Gonzales got out of his police car, approached defendant, and asked him if he was on parole. Defendant said he was.

Officer Gonzales conducted a patdown search of defendant.  While defendant was sitting on the blanket, the officer had defendant put his hands on his head and his feet out in front of him with his ankles crossed.

According to Officer Gonzales, defendant "was extremely irritated with [Officer Gonzales] for stopping him."  Defendant told Officer Gonzales, "why don't [you] fucking stop," "'What are you doing?'" and "'Leave me alone.'"  Officer Gonzales told defendant he was on parole and needed to cooperate.  Defendant called Officer Gonzales "a fucking asshole for bothering him."

3

Officer Gonzales did not find any weapons on defendant during the patdown search.  However, he could not reach defendant's groin or waist area because of how defendant was seated and the way defendant's pants were positioned.  He told defendant to keep his hands to his side and not to reach towards his waist.

Officer Gonzales then walked to his police vehicle about 20 feet away to check on defendant's compliance record.  When defendant started to stand up, the officer ordered him to get back down and to put his feet out.  Defendant complied.

Officer Gonzales learned that there was a parolee at large warrant out for defendant's arrest.  The warrant indicated that defendant was "armed and dangerous." Defendant's parole officer testified at trial that if the subject of a parolee at large warrant is contacted by any law enforcement official, the law enforcement officer has a "responsibility . . . to arrest the person and take them into local custody."  Officer Gonzales requested a "backing officer" for this purpose.

When Officer Gonzales returned to where defendant was sitting, defendant asked, "'Are you taking me in?'" and "'Am I wanted?'"  To both questions, Officer Gonzales answered no.  He did not tell defendant he was under arrest.[2]

While they waited, defendant (according to Officer Gonzales) "was really getting irritated about how long everything was taking" and "kept messing with his waist area." Officer Gonzales told defendant to relax.  At one point, defendant turned his back toward

---

[2]  Officer Gonzales explained at trial that the police do not tell someone who is considered violent that "they're arrested until we get sufficient units there.  We try to get handcuffs on them before they know they're arrested."

4

the officer, did something to his waist area, and looked over his shoulder at the officer with a panicked look on his face. Officer Gonzales became concerned that defendant might be arming himself with a weapon. He pulled out his firearm and Taser, moved toward defendant, and ordered defendant to turn back toward him, put his feet out, and get his hands away from his waist area. Defendant complied. Officer Gonzales holstered his gun and Taser and activated an audio recorder he carried in his pocket.

When defendant moved his hands toward his waist again, Officer Gonzales told defendant to put his hands on his head. The officer approached defendant to put handcuffs on him. Defendant interlaced the fingers of his hands and placed them on his head in a cooperative manner. After Officer Gonzales got a grip on defendant's hands, defendant pulled his right arm away and dropped it towards his waist. The officer kneed him in the back and hit him in the back of the head to get defendant down on his stomach. He then pulled out his Taser and deployed it on defendant.

Officer Gonzales then commanded defendant to stay down, keep his feet out, and get his hands out to his sides. Defendant initially complied, but then moved his right knee upward and started reaching toward the Taser prongs stuck in his back. Officer Gonzales told defendant not to reach around. When defendant ignored the order and grabbed a Taser prong, the officer deployed the Taser again. This second deployment did not work as well as the first, and defendant was able to stand up.

Officer Gonzales tried to push defendant to the ground, but defendant turned his back to the officer. The Taser cord wrapped around Officer Gonzales's arms. Defendant

5

turned towards Officer Gonzales and started kicking and pushing him, striking him in his thigh, chest, and stomach.

Officer Gonzales deployed the Taser a third time. Because the officer was wrapped up in the cord, he (the officer) received "the full tasing" and dropped the Taser. Defendant then kicked Officer Gonzales in the thigh and stomach and started running away. As he ran, defendant yelled profanities and moved or waved his arm toward and away from his lower waist area, as if he was throwing something. Officer Gonzales ran after him.

Officer Larraga arrived and, in a marked police car with lights and sirens activated, drove in front of defendant. Defendant turned and ran back towards Officer Gonzales. Officer Gonzales told defendant to get down. When Officer Gonzales saw defendant's fist clenched, he pulled out and extended a collapsible baton. When defendant attempted to hit Officer Gonzales, the officer struck defendant in his left thigh. The two started hitting each other and the baton was knocked from Officer Gonzales's hand. They fell to the ground and continued fighting. Defendant grabbed the baton from the ground and each struggled to gain control of it.

Officer Larraga joined the fray. The two officers issued commands to defendant, but defendant did not comply. After the officers pinned defendant down on the ground, defendant continued to struggle. He grabbed two of Officer Gonzales's fingers and bent them backward. Eventually, defendant was subdued, handcuffed, told he was under arrest, and taken to the hospital.

The area was searched and no weapon was found.

At trial, defense counsel argued that Officer Gonzales "overreacted," failed to follow proper procedures, and used excessive, unnecessary, and unreasonable force against defendant.

## III.  DISCUSSION

A  *Pitchess Motion*

Prior to trial, defendant filed a motion for the discovery of certain information regarding Officers Gonzales and Larraga pursuant to *Pitchess* and related law.  The City of Ontario Police Department opposed the motion.  Following a hearing, the court denied the motion, explaining that defense counsel's "declaration simply denies the elements of the offense charged."  Defendant contends the ruling was an abuse of discretion.  We agree.

1. Summary of Defendant's *Pitchess* Motion

In his moving papers, defendant asserted his actions during the incident "were compelled by the improper and unlawful conduct of the officer(s)" and that he "intends to establish that he did not disobey a lawful order and that the officer(s) used excessive, unreasonable and unnecessary force in carrying out their duties.  Therefore any acts committed by Defendant were justified."  He planned "to defend himself with allegations of [officer] misconduct, including, but not limited to, excessive violence, unnecessary force, false arrest, and false or inaccurate reporting."  Defendant sought to support this

defense with complaints or other evidence of the officers' excessive force, aggressive conduct, unnecessary force or violence, false arrest, false reports, and dishonesty.

Defendant requested materials and information pertaining to complaints and disciplinary proceedings concerning the officers as to acts of dishonesty, false arrest, illegal search and seizure, fabrication of charges and/or evidence, unnecessary acts of aggressive behavior, acts of violence, acts of excessive force, and bias.

The motion was supported by defense counsel's declaration. Regarding the incident, defense counsel stated the following: Officer Gonzales knew defendant and had harassed him on four occasions in the preceding two months; on the date of the incident, defendant was walking at a park, "minding his own business," and sat down to rest; Officer Gonzales did not inform defendant he was detained and defendant believed he was free to leave; he got up and began to walk away; Officer Gonzales kneed him in the back and struck him in the back of his head "for no reason"; the officer also tased him three times for no reason; the second officer to arrive on the scene struck him on his leg with a baton and pinned him on the ground with a baton for no reason, and struck him five times with his knee; and he suffered a chipped tooth and was taken to the hospital with chest pains as a result of the officers' "use of excessive and unnecessary force."

Defendant's moving papers included copies of the police reports prepared by Officers Gonzales and Larraga. The descriptions of the incident set forth in these reports are generally consistent with the officers' trial testimony summarized above. In his declaration, defense counsel stated that defendant disagreed with the officers' versions of

8

the incident. For example: defendant abided with all of the officers' commands, was cooperative, and did not resist; defendant never reached for anything around his waist area and never attempted to break free when the officer tried to handcuff him; he did not roll onto his side or reach back to pull the Taser prongs out; defendant did not punch, kick, or hit the officers, and did not knock a baton out of the officer's hand or grab the baton off the ground; he did not discard anything in the park; and he did not pull the officer's hand or fingers. Defense counsel also pointed out what he described as a "notable discrepancy" between the reports of the two officers. In Officer Gonzales's report, the officer stated that defendant knocked the baton out of the officer's hand; Officer Larraga, on the other hand, stated that defendant grasped the baton away from Officer Gonzales.

Defense counsel stated that the officers falsified their police reports "in order to concoct charges against the Defendant to justify [their] use of excessive and unnecessary force." Counsel further explained that the character, habits, customs, and credibility of the officers would be a material issue at trial and that the requested records were essential to evaluating the officers' propensity for violence and excessive force, and their character for honesty and veracity.

Finally, counsel set forth facts pertaining to the City of Ontario Police Department's possession and control of the documents sought.

2. <u>Analysis</u>

Subject to certain exclusions and limitations, a defendant is entitled to discover a police officer's confidential personnel records that contain information relevant to the defendant's defense. (*People v. Gaines* (2009) 46 Cal.4th 172, 179 (*Gaines*).) This right, established in *Pitchess* and subsequently codified in Evidence Code sections 1043 through 1045, is "based on the 'fundamental proposition that [an accused] is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information.' [Citation.]" (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 84 (*Santa Cruz*).) The statutory scheme "carefully balances two directly conflicting interests: the peace officer's just claim to confidentiality, and the criminal defendant's equally compelling interest in all information pertinent to his defense." (*Ibid.*)

To obtain discovery, the defendant must file a motion, supported by affidavits, "showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that the governmental agency identified has the records or information . . . ." (Evid. Code, § 1043, subd. (b)(3); see *Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1019 (*Warrick*).) If good cause is shown, the trial court then reviews the records in camera to determine if any are relevant to the proposed defense. (Evid. Code, § 1045, subd. (b); *Gaines, supra,* 46 Cal.4th at p. 179.) If any information is relevant, the court must disclose such information to the defendant unless it is subject to a statutory exception or limitation. (Evid. Code, § 1045, subd. (a); *Gaines, supra,* at p. 179.)

10

The showing of good cause that triggers the trial court's in-chambers review "is measured by 'relatively relaxed standards' that serve to 'insure the production' for trial court review of 'all potentially relevant documents.' [Citation.]" (*Gaines, supra,* 46 Cal.4th at p. 179.) To make this showing, the defendant must propose a defense and establish "a logical link between the defense proposed and the pending charge." (*Warrick, supra,* 35 Cal.4th at p. 1021.) The defendant must also "articulate how the discovery being sought would support such a defense or how it would impeach the officer's version of events." (*Ibid.*)

The affidavit supporting the motion must "describe a factual scenario supporting the claimed officer misconduct," which "may consist of a denial of the facts asserted in the police report." (*Warrick, supra,* 35 Cal.4th at pp. 1024-1025.) The description may be based on information and belief and, at this point in the discovery process, need not be credible or persuasive. (*Id.* at p. 1026; see also *People v. Thompson* (2006) 141 Cal.App.4th 1312, 1318 (*Thompson*).) The factual scenario must merely be "plausible when read in light of the pertinent documents." (*Warrick, supra,* at p. 1025.) A "plausible scenario of officer misconduct is one that might or could have occurred"; that is, "it presents an assertion of specific police misconduct that is both internally consistent and supports the defense proposed to the charges." (*Id.* at p. 1026.)

A *Pitchess* motion is addressed to the trial court's sound discretion. (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039; *Pitchess, supra,* 11 Cal.3d at p. 535.) "The discretion of a trial court is, of course, '"subject to the limitations of legal principles

11

governing the subject of its action.'" [Citation.]" (*People v. Eubanks* (1996) 14 Cal.4th 580, 595.) "'Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.'" (*People v. Jacobs* (2007) 156 Cal.App.4th 728, 737.) Thus, when a defendant's declaration in support of a *Pitchess* motion is sufficient to compel the trial court to conduct an in camera review of discoverable material, the trial court's refusal to do so is an abuse of discretion. (*Uybungco v. Superior Court* (2008) 163 Cal.App.4th 1043, 1050.)

Here, defendant proposed a defense that is logically linked to the charges of resisting an executive officer, viz., that defendant did not disobey a *lawful* order and that any acts he committed were justified by the officers' use of excessive, unreasonable, and unnecessary force. (See, e.g., *People v. White* (1980) 101 Cal.App.3d 161, 164, 166-167 ["where excessive force is used in making what otherwise is a technically lawful arrest, the arrest becomes unlawful and a defendant may not be convicted of an offense which requires the officer to be engaged in the performance of his duties"]; *People v. Olguin* (1981) 119 Cal.App.3d 39, 45 [same].)

The factual scenario described in defense counsel's declaration is plausible; that is, it might have or could have occurred. (See *Warrick, supra,* 35 Cal.4th at p. 1026.) Defendant claims Officer Gonzales had previously harassed him on four occasions in the two months preceding the incident. Both defendant and Officer Gonzales agree that on the day of the incident defendant was sitting in the park not bothering anyone when the

12

officer approached. Defendant contends he got up to leave because he had not been told he was being detained. Officer Gonzales then kneed defendant in the back, struck him in the head, and tased him multiple times. Officer Gonzales claimed he took these actions because he feared defendant "was going for a weapon"; defendant contends the officer did so "for no reason." The subsequent beating by Officer Larraga was also "for no reason."

Defendant's description of events is consistent with the alleged history of harassment by Officer Gonzales and the undisputed fact that defendant was injured and hospitalized at the conclusion of the incident. Regardless of how one might view the defendant's credibility or the persuasiveness of his version of the events, the factual description is "both internally consistent and supports the defense proposed to the charges." (*Warrick, supra,* 35 Cal.4th at p. 1026; see also *Santa Cruz, supra,* 49 Cal.3d at pp. 85-86 [counsel's declaration that officers used excessive force supported defense to charge of resisting arrest for purposes of establishing materiality under *Pitchess*].)

The Attorney General asserts that defense counsel's declaration "merely refuted the elements of the criminal charges." This is incorrect. Although defense counsel did explicitly deny essential facts asserted by the officers in their reports, he also sets forth a detailed and coherent description of the events, beginning with Officer Gonzales's history of recent harassment against defendant, followed by defendant's attempt to rest at the park while "minding his own business," the failure of the officer to inform defendant he was being detained, his belief that he was free to leave and his attempt to walk away, and

13

the officer's violent response "for no reason." Counsel further describes how the second officer arrived and struck defendant with a baton "for no reason," pinned him to the ground, and struck him numerous times. Defense counsel's declaration is thus more than a mere denial of the charges and, under *Warrick*, is sufficient to establish a plausible factual scenario. (See *Warrick, supra,* 35 Cal.4th at pp. 1024-1025 [the "factual scenario, depending on the circumstances of the case, may consist of a denial of the facts asserted in the police report"].)

The Attorney General further argues that the factual scenario described by defense counsel omits "the significant fact that [defendant's] parolee status permitted police to detain and search him" and fails to explain "how, in light of parole agents and police officers having the legal right to search him based on his parolee status, police action in this case was misconduct." Defendant's status as a parolee is indisputably relevant to determining the lawfulness of the officers' and defendant's actions. However, the failure to mention that status in counsel's declaration does not render the declaration inadequate. First, in determining whether there is a sufficient plausible factual foundation for the alleged misconduct, the court is required to evaluate the "defendant's averments, '[v]iewed *in conjunction with the police reports*' and any other documents . . . ." (See *Warrick, supra,* 35 Cal.4th at p. 1025, italics added.) Here, defendant's status as a parolee is evident in Officer Gonzales's police report. There was thus no need for defense counsel to supply that information. Second, taken together, the events described in counsel's declaration—a violent, physical beating and repeated use of a Taser "for no

14

reason"—establish a plausible factual foundation for the alleged misconduct *even if defendant is a parolee*. While a parolee is generally subject to search (see *People v. Reyes* (1998) 19 Cal.4th 743, 753-754), he may not be searched for the purpose of harassment (see *People v. Bravo* (1987) 43 Cal.3d 600, 610), let alone beaten for no reason.

The Attorney General next asserts that defendant did not explain how the information sought would be relevant to evaluating the officers' conduct or impeaching their testimony. We disagree. *Santa Cruz, supra,* 49 Cal.3d 74 is instructive. In that case, the defendant was charged with resisting arrest and sought discovery of prior complaints against the arresting officers to support a defense that the officers acted with excessive force or violence. (*Id.* at pp. 78-79.) The defendant's counsel averred that such complaints would tend to show or lead to evidence that would show a tendency or propensity of the arresting officers to engage in the use of unlawful and excessive force in the execution of arrests. (*Id.* at pp. 79-80, 85.) The Supreme Court held that counsel's averments, viewed in conjunction with the police reports, "establish a plausible factual foundation for an allegation of excessive force, put the court on notice that the officers' alleged use of excessive force will likely be an issue at trial, and articulate a valid theory as to how the information sought might be admissible" and that the defendant "has plainly demonstrated the materiality of the requested information . . . ." (*Id.* at p. 86, citing Evid. Code, §§ 1103, 1105; *Pitchess, supra,* 11 Cal.3d at p. 537; *People v. Memro* (1985) 38 Cal.3d 658, 681-682.)

15

Here, the prosecution's case was based almost entirely upon the testimony of Officers Gonzales and Larraga, and the focus of the defense was that the officers overreacted and used excessive force. As defense counsel averred, the officers' "character for honesty and veracity," as well as their "propensity for violence or past acts of excessive force" were substantial issues in the case. The information defendant sought was, like the similar information sought in *Santa Cruz*, plainly material to these issues.

*Thompson, supra,* 141 Cal.App.4th 1312, upon which the People and the trial court relied below, is distinguishable. In *Thompson*, the defendant was accused of selling cocaine to an undercover police officer who was wearing a wire. (*Id.* at pp. 1314-1315.) The officer bought the cocaine with two $5 bills that had been previously photographed for identification. (*Id.* at p. 1315.) After his arrest, the defendant filed a *Pitchess* motion for records pertaining to 11 officers involved in the drug transaction, including the undercover officer, six officers who saw the transaction, two officers who monitored the wire, an arresting officer who found the $5 bills on the defendant, and an officer who identified the currency as the "buy money." (*Id.* at pp. 1315-1316.) According to the defendant's counsel, no drug transaction occurred and the 11 officers fabricated the allegations against the defendant "'to punish the defendant for being in the wrong area, at the wrong time and for having a prior criminal history. . . .'" (*Id.* at p. 1317.) The trial court denied the defendant's motion and the Court of Appeal affirmed.

According to the Court of Appeal, the defendant was essentially claiming that "because he was standing at a particular location, 11 police officers conspired to plant

16

narcotics and recorded money in his possession, and to fabricate virtually all the events preceding and following his arrest. . . . The officers agreed to completely misrepresent what they saw and heard as percipient witnesses." (*Thompson, supra,* 141 Cal.App.4th at p. 1318.) In discussing the *Warrick* court's view of factual plausibility, the *Thompson* court acknowledged that the defendant "need not present a factual scenario that is reasonably likely to have occurred or is persuasive or even credible." (*Thompson, supra,* at p. 1318.) However, the court explained, "'plausible'" is not "synonymous with 'possible,' and [*Warrick*] does not require an in camera review based on a showing that is merely imaginable or conceivable and, therefore, not patently impossible. *Warrick* permits courts to apply common sense in determining what is plausible, and to make determinations based on a reasonable and realistic assessment of the facts and allegations." (*Id.* at pp. 1318-1319.) In short, the defendant's assertion that there was an elaborate, 11-officer conspiracy to falsify facts supporting a $10 cocaine sale was simply beyond the realm of common sense.

Here, defendant's version of events, even if ultimately proved untrue, is not so fanciful or unrealistic as the conspiracy asserted in *Thompson*. Officer Gonzales was alone when he encountered defendant; there was no alleged conspiracy with multiple officers. According to Officer Gonzales, he saw defendant sitting in the park and recognized him as a parolee and decided to stop and search him. Although defendant, as a parolee, was presumably subject to a parole compliance search, the officer's decision to search defendant at that time and place is consistent with defendant's assertion that

17

Officer Gonzales had harassed him on other occasions in the preceding two months. As for the conflicting views of events that transpired prior to the arrival of Officer Larraga, there does not appear to be any other witnesses or, as in *Thompson*, coconspirators. Officer Gonzales could thus fabricate a police report without needing the complicity of others. Because of Officer Larraga's late arrival on the scene, his observations are not inconsistent with defendant's assertions of unprovoked beatings and tasings by Officer Gonzales prior to Officer Larraga's arrival. For all these reasons, the scenario alleged by defendant is not comparable to the "merely imaginable," but implausible, facts asserted by the defendant in *Thompson*. That case is therefore not controlling here.

We hold that, under the applicable legal principles, defendant established good cause for the discovery of records pertaining to police misconduct by Officers Gonzales and Larraga. In the papers submitted in support of the *Pitchess* motion, viewed in conjunction with the police reports, defendant sets forth a plausible factual scenario of police misconduct and articulates how the discovery would support a defense to the charges of resisting an executive officer. Therefore, defendant satisfied the relatively low threshold required to obtain an in camera review of discoverable material.[3]

---

[3] In addition to opposing defendant's motion on the ground defendant failed to establish good cause, the People asserted below that the scope of discovery should be limited in a variety of ways and that any disclosure be subject to a protective order. These arguments were not addressed by the trial court and the issues have not been briefed on appeal. Therefore, we do not address them. Following remand, if discovery is permitted, the trial court may consider such arguments. (See *People v. Moreno* (2011) 192 Cal.App.4th 692, 702, fn. 4 [Fourth Dist., Div. Two].)

The remedy "is not outright reversal, but a conditional reversal with directions to review the requested documents in chambers on remand." (*Gaines, supra,* 46 Cal.4th at p. 180.) In conducting the in camera proceeding, the court shall administer an oath to the custodian of records produced by the responding entity, make appropriate inquiries to determine that all potentially relevant documents have been produced, and make a clear record of the proceeding and the documents reviewed at the hearing to allow for appellate review. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1226-1230; *People v. White* (2011) 191 Cal.App.4th 1333, 1337-1338.) "After reviewing the confidential materials in chambers, the trial court may determine that the requested personnel records contain no relevant information." (*Gaines, supra,* at p. 181.) If so, the trial court shall reinstate the judgment. (*Ibid*.) Even if the in camera review reveals relevant and discoverable information, reversal is not necessarily required. The defendant "must also demonstrate a reasonable probability of a different outcome had the evidence been disclosed." (*Id.* at p. 182.) "If the defendant does demonstrate such a probability, the court must order a new trial; if he does not, the judgment shall be reinstated." (*People v. Moreno, supra,* 192 Cal.App.4th at p. 703.)

B. *Sufficiency of the Evidence*

Defendant contends the evidence was insufficient to support his conviction for resisting an executive officer under Penal Code section 69. The elements of this crime are: (1) the defendant unlawfully used force or violence to resist an executive officer; (2) when the defendant acted, the officer was performing his lawful duty; and (3) when the

defendant acted, he knew the executive officer was performing his duty. (CALCRIM No. 2652.) Defendant argues that the evidence at trial establishes that Officer Gonzales used excessive force against defendant and, therefore, that the officer was not performing his *lawful* duty.

In reviewing a criminal conviction challenged as lacking evidentiary support, we "review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) "'[O]ur power begins and ends with a determination as to whether there is *any* substantial evidence to support [the conviction]; . . . we have no power to judge . . . the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom.' [Citations.]" (*Leff v. Gunter* (1983) 33 Cal.3d 508, 518.)

The evidence adduced at trial is summarized above and need not be repeated here. Viewing the evidence and the reasonable inferences drawn therefrom, the critical point occurred when Officer Gonzales attempted to place handcuffs on defendant. By that time, the officer had been informed that defendant was "armed and dangerous" and the subject of a parolee at large warrant. He was also aware that he had not been able to search defendant's groin or waist area where defendant could have concealed a weapon and had observed defendant "messing with his waist area." As Officer Gonzales

20

attempted to handcuff defendant, defendant "pulled his right arm away and it immediately dropped towards his waist area." Officer Gonzales explained that he kneed defendant in the back and hit him in the head to get defendant "down on his stomach and his hand out from whatever he was trying to get from his waist." Under the circumstances described by Officer Gonzales, jurors could reasonably conclude that defendant was resisting arrest and reaching for a weapon, and that Officer Gonzales's actions were reasonable and therefore lawful. (See Pen. Code, § 835a [an officer attempting to make an arrest shall not "be deemed an aggressor or lose his right to self-defense by the use of reasonable force to effect the arrest or to . . . overcome resistance."].) In light of defendant's continued resistance and physical aggression toward Officer Gonzales, the jury could further reasonably conclude that Officer Gonzales's subsequent actions were also lawful. We therefore reject defendant's claim that the evidence was insufficient to establish that Officer Gonzales was performing his lawful duty.

## IV. DISPOSITION

The judgment is conditionally reversed. Upon remand, the trial court may consider any issues regarding the defendant's *Pitchess* motion that were not previously addressed and shall conduct an in camera review of the documents produced in response to defendant's motion. The court shall administer an oath to the custodian of records and ensure an adequate record for appellate review. If the trial court's inspection reveals no discoverable information, the trial court must reinstate the judgment of conviction and

21

sentence. If the inspection reveals discoverable information, the trial court must order disclosure, allow defendant an opportunity to demonstrate prejudice, and order a new trial if there is a reasonable probability the outcome would have been different had the information been disclosed. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING

J.

We concur:

McKINSTER

Acting P. J.

MILLER

J.