[No. B184566. Second Dist., Div. Six. Aug. 2, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN L. THOMPSON, Defendant and Appellant.

## COUNSEL

James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Jaime L. Fuster and Victoria B. Wilson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PERREN, J.**—Juan L. Thompson appeals his conviction for the sale of cocaine base. (Health & Saf. Code, § 11352, subd. (a).) He contends that the

trial court erred by denying his *Pitchess* motion for discovery without conducting an in camera review of the requested police personnel records.[1] In *Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1026 [29 Cal.Rptr.3d 2, 112 P.3d 2], our Supreme Court concluded that any "plausible" showing that "might or could have occurred" is sufficient to require in camera review. Thompson, however, is unable to satisfy this unquestionably low threshold. Although his factual showing is possible, it is not plausible by any rational standard. We affirm.

## FACTS

Officer Michael Saragueta was working undercover as part of the narcotics "buy team" of the Los Angeles Police Department. He approached Thompson who was standing near the street. Thompson asked, "How much," and Saragueta answered, "A dime." A "dime" means $10 worth of drugs. Thompson handed Saragueta two off-white solids later identified as cocaine base, and Saragueta handed Thompson two $5 bills the police had photocopied for later identification.

Officer Saragueta was working with several other police officers in the buy team, and was wearing a one-way "wire." Several officers watched the transaction from 25 to 30 feet away and saw the exchange of money for the drugs. Two other officers monitored the wire and heard the verbal portion of the transaction.

When the exchange was completed, Saragueta walked away and signaled his fellow officers that a drug transaction had been completed. Uniformed officers who were not part of the buy team arrived at the scene and arrested Thompson. One of the uniformed officers searched Thompson and recovered two $5 bills, which were identified as the bills Saragueta gave to Thompson in payment for the cocaine base.

## DISCUSSION

### *No Error in Denial of* Pitchess *Motion*

Thompson moved for discovery of personnel records and other information covering 11 Los Angeles Police Department officers and detectives who were involved in the drug transaction. (See *Pitchess v. Superior Court, supra,* 11 Cal.3d 531.) In addition to Saragueta, the motion named six officers who saw the transaction, two detectives who monitored Saragueta's wire, the arresting

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305].

officer who found two $5 bills in Thompson's possession, and an officer who identified the bills as Saragueta's buy money.

The trial court denied the motion, concluding that the showing in support of the motion was insufficient to establish good cause to conduct an in camera review of the documents. Thompson contends that the denial was error under the standard set forth in *Warrick*. We disagree. We conclude that, under the *Warrick* standard, the trial court could reasonably conclude that Thompson failed to show good cause for the requested discovery because he did not present a specific factual scenario that is plausible when read in light of the pertinent documents and undisputed circumstances. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1228 [114 Cal.Rptr.2d 482, 36 P.3d 21] [trial court ruling on *Pitchess* motion is reviewed for abuse of discretion].)

■ A defendant is entitled to discovery of a police officer's confidential personnel records that contain information relevant to the defendant's defense. (*Pitchess v. Superior Court, supra,* 11 Cal.3d at pp. 537–538; Evid. Code, §§ 1043–1045.) The procedure requires a showing of good cause for the discovery, an in camera review of the records if good cause is shown, and disclosure of information "relevant to the subject matter involved in the pending litigation." (Evid. Code, § 1045, subd. (a).)

There is a "relatively low threshold" for establishing the good cause necessary to compel in camera review by the court. (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 83–84 [260 Cal.Rptr. 520, 776 P.2d 222], quoted in *Warrick v. Superior Court, supra,* 35 Cal.4th at p. 1016.) The defendant must show that the personnel records are material to his or her defense, and state a reasonable belief that the records contain the type of information sought. (*Warrick*, at p. 1016.)

Most importantly for the instant case, the defendant must " 'establish a plausible factual foundation' " for its defense. (*Warrick v. Superior Court, supra,* 35 Cal.4th at p. 1025.) To do so, the defendant "must present . . . a specific factual scenario of officer misconduct that is plausible when read in light of the pertinent documents." (*Ibid.*) A scenario sufficient to establish a plausible factual foundation "is one that *might or could have occurred.* Such a scenario is plausible because it presents an assertion of specific police misconduct that is both internally consistent and supports the defense proposed to the charges." (*Id.,* at p. 1026, italics added.)

Depending on the circumstances of the case, the denial of facts described in the police report may establish a plausible factual foundation. (*Warrick v. Superior Court, supra,* 35 Cal.4th at pp. 1024–1025.) A factual scenario does not have to be reasonably probable or credible. "To require a criminal

defendant to present a *credible* or *believable* factual account of, or a motive for, police misconduct suggests that the trial court's task in assessing a *Pitchess* motion is to weigh or assess the evidence. It is not." (*Warrick*, at p. 1026.)

Thompson's *Pitchess* motion asserted that, according to the police report, Officers Vbarilla, Jackson, Curry, Rubalcava, Vizcarra, and Suviate witnessed Saragueta conduct the drug transaction; Detectives Mossman and Kanchaha-mongkol monitored the wire; Officer Fernandez found money in Thompson's possession; and Officer Diaz confirmed that it was the buy money. The motion sought identification of all persons who filed or were interviewed regarding complaints against any of the officers concerning acts of false arrest, illegal search and seizure, fabrication of evidence, planting evidence, dishonesty, and other forms of misconduct. The motion also sought copies of statements from complainants, copies of investigative reports and psychological evaluations of the officers, and records of disciplinary actions and board of rights hearings.

A declaration from defense counsel stated that "the officers did not recover any buy money from the defendant, nor did the defendant offer and sell drugs to the undercover officer." The "officers saw defendant and arrested him because he was in an area where they were doing arrests." When "defendant was stopped by the police and once they realized he had a prior criminal history they fabricated the alleged events and used narcotics already in their possession and attributed these drugs to the defendant." The charges "are a fabrication manufactured by the officers to avoid any type of liability for their mishandling of the situation and to punish the defendant for being in the wrong area, at the wrong time and for having a prior criminal history. . . ."

This showing is insufficient because it is not internally consistent or complete. We do not reject Thompson's explanation because it lacked credibility, but because it does not present a factual account of the scope of the alleged police misconduct, and does not explain his own actions in a manner that adequately supports his defense. Thompson, through counsel, denied he was in possession of cocaine or received $10 from Officer Saragueta. But he does not state a nonculpable explanation for his presence in an area where drugs were being sold, sufficiently present a factual basis for being singled out by the police, or assert any "mishandling of the situation" prior to his detention and arrest. Counsel's declaration simply denied the elements of the offense charged.

A comparison of the instant facts with the *Warrick* facts is instructive. In *Warrick,* the police report stated that police officers saw the defendant holding a baggie of rock cocaine in an area known for narcotics activity. When he

saw the police, the defendant fled, discarding numerous rocks of cocaine. One officer recovered 42 rocks. (*Warrick v. Superior Court, supra,* 35 Cal.4th at p. 1016.) The defendant denied possessing or discarding the rock cocaine. Counsel's declaration stated that he was in the area to buy cocaine and ran from the police because of an outstanding warrant. Other people were pushing and shoving each other to retrieve rocks from the ground and a police officer claimed defendant "must have thrown" at least some of them. (*Id.,* at p. 1017.)

*Warrick* concluded that the defendant's version of events was plausible and internally consistent because it claimed he fled from the police who saw rock cocaine on the ground and mistook the defendant as the person who discarded it. (*Warrick v. Superior Court, supra,* 35 Cal.4th at p. 1027.) In *Warrick,* the defendant did not merely make bald assertions that denied the elements of the charged crime. He provided an alternate version of the events that was plausible, if not entirely convincing. The defendant presented a "specific factual scenario" that explained his presence in the area, his running from the police, and a reason for the police to conclude that he had discarded the rock cocaine they recovered. And the scenario supplied, at least by inference, an explanation for the cocaine being on the ground, namely that others had discarded it to avoid arrest.

Thompson does not provide an alternate version of the facts regarding his presence and his actions prior to and at the time of his arrest. He does not explain the facts set forth in the police report. In essence, his declaration claims that the entire incident was fabricated and, by inference, that the police officers conspired to do so in advance. Thompson is not asserting that officers planted evidence and falsified a police report. He is asserting that, because he was standing at a particular location, 11 police officers conspired to plant narcotics and recorded money in his possession, and to fabricate virtually all the events preceding and following his arrest. The officers were not called upon to exaggerate or forget certain facts, or make assertions based on assumptions and inferences. The officers agreed to completely misrepresent what they saw and heard as percipient witnesses.

■ We are aware that Thompson need not present a factual scenario that is reasonably likely to have occurred or is persuasive or even credible. (*Warrick v. Superior Court, supra,* 35 Cal.4th at pp. 1025–1026.) Further, we cannot conclude that Thompson's scenario is totally beyond the realm of possibility. Thompson's denials "might or could have occurred" in the sense that virtually anything is possible. *Warrick* did not redefine the word "plausible" as synonymous with "possible," and does not require an in camera review based on a showing that is merely imaginable or conceivable and, therefore, not patently impossible. *Warrick* permits courts to apply common

sense in determining what is plausible, and to make determinations based on a reasonable and realistic assessment of the facts and allegations.

■ We also reject Thompson's claims that denial of his *Pitchess* motion violated his federal constitutional right to due process. Under *Brady v. Maryland* (1963) 373 U.S. 83, 86–87 [10 L.Ed.2d 215, 83 S.Ct. 1194], a prosecutor must disclose material evidence that is favorable to the defendant. California's *Pitchess* discovery scheme "creates both a broader and lower threshold for disclosure than does the high court's decision in *Brady* . . . ." (*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 14 [124 Cal.Rptr.2d 202, 52 P.3d 129].) "[I]f a defendant cannot meet the less stringent *Pitchess* materiality standard, he or she cannot meet the more taxing *Brady* materiality requirement." (*People v. Gutierrez* (2003) 112 Cal.App.4th 1463, 1474 [6 Cal.Rptr.3d 138].)

The judgment is affirmed.

Gilbert, P. J., and Coffee, J., concurred.

A petition for a rehearing was denied August 23, 2006, and appellant's petition for review by the Supreme Court was denied November 1, 2006, S146403.