[No. F052682. Fifth Dist. July 21, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
MELLON C. MOSELEY, JR., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I., II. and III. of the Discussion.

**COUNSEL**

Terry R. Kolkey, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WISEMAN, J.**—Defendant Mellon C. Moseley, Jr., was convicted of possession of methamphetamine for sale; possession of marijuana; opening or maintaining a place for selling, giving away or using a controlled substance; being a felon in possession of ammunition; and possession of drug paraphernalia. He now argues that the court should have granted his acquittal motion

on the charge of opening or maintaining a place for sale or use; that the court instructed the jury erroneously on that offense; and that the sentence for that offense should have been stayed pursuant to Penal Code section 654 because it and the possession-of-methamphetamine-for-sale charge arose from a single criminal objective.

The People concede that the court erred when it added one-year enhancements to the sentences for two crimes based on a single prior prison term. We shall strike one of those enhancements and affirm the judgment in all other respects. We publish our discussion of the Penal Code section 654 issue.

## *FACTUAL AND PROCEDURAL HISTORIES*

Moseley and codefendant Lisa Gay Davis were dating. He visited her at her apartment in Los Banos every day. Police suspected Moseley of drug offenses and obtained a search warrant targeting him at Davis's apartment. Davis herself was not a suspect. Officers staked out the apartment on October 3, 2006, waiting for Moseley to arrive. He drove up in front of the building, and the officers served the warrant and searched him. They found a .40-caliber bullet in his pants pocket and a glass smoking pipe in his boot. The pipe contained melted methamphetamine.

The officers knocked on the apartment door. When Davis answered, they ordered her to lie on the floor and handcuffed her. Near her on the floor they spotted a black pouch, which contained a glass smoking pipe.

An officer searched the apartment's only bedroom. Above the headboard of the bed, he found a red zippered pouch. It contained a digital scale and seven small bags, each containing a substance that appeared to be methamphetamine. On a "speaker box" in the bedroom the officer found another small bag containing a substance that appeared to be methamphetamine.

In a closet in the hallway, officers found a locked wooden box. An officer picked the lock and opened the box. Inside was some marijuana, another scale, and a plastic bag containing 30 to 40 smaller plastic bags. There was also a small bag of a substance appearing to be methamphetamine.

A total of nine bags containing what looked like methamphetamine—seven from the red pouch above the headboard, one from the speaker box in the bedroom, and one from the locked box—were sent to a state crime lab for testing. The contents of four of the bags were tested and found to be methamphetamine. The contents of the remaining bags were not tested.

The district attorney filed an information against Moseley and Davis as codefendants. The information charged both defendants with possessing

methamphetamine for sale (Health & Saf. Code, § 11378); possessing marijuana for sale (Health & Saf. Code, § 11359); opening or maintaining a place for selling, giving away or using a controlled substance (Health & Saf. Code, § 11366); and possessing drug paraphernalia (Health & Saf. Code, § 11364). The information charged Moseley alone with possessing ammunition while being prohibited to do so. (Pen. Code, § 12316, subd. (b)(1).) For sentence-enhancement purposes, the information alleged that Davis had committed a prior robbery. It alleged that Moseley had prior convictions for violations of section 11378 of the Health and Safety Code (possession of a controlled substance for sale) and section 243, subdivision (d), of the Penal Code (battery with serious bodily injury), had served a prior prison term, and was on bail at the time of the current offenses.

At the joint trial, a police expert, Owen Paul Johnson, opined that Moseley and Davis were both methamphetamine users. His opinion about Moseley was based on the discovery of a smoking pipe containing methamphetamine located in Moseley's possession. He thought Davis was a user because there was methamphetamine and paraphernalia in her apartment and because she had sores on her face and "just had the appearance of somebody that's a heavy meth user." Johnson also opined that the methamphetamine found in the apartment was there for the purpose of being sold. This opinion was based on the quantity of methamphetamine found, the presence of the scales and numerous small, unused plastic bags, and Davis's statement that up to four or five people came to see Moseley at the apartment daily for brief visits. Johnson also believed the marijuana in the wooden box was being kept there for sale, since no means of smoking it were found in the apartment. There were no pay/owe sheets, large amounts of cash, pagers, or cell phones in the apartment, but drug dealers often keep money and pay/owe sheets in a separate location from the drugs themselves in order to avoid losing both in case of a raid.

Davis testified. When the police searched her apartment and arrested her, she had known Moseley for years and had been dating him for nine months. He had a key and came to her apartment every day and stayed overnight for up to a week at a time. She had trouble with her back and shoulder, so he helped her do housework and take care of her yard. He bought her groceries and a washing machine, sometimes paid utility bills, and once helped her avoid losing her apartment. He kept his clothes in the closet where the wooden box was found and had the exclusive use of that closet. Davis had no key to the box. She claimed she had no knowledge of Moseley's dealings with drugs, never saw him use or sell drugs, had never seen the drugs the police found, and did not know that any drugs had been brought into her apartment. She was not aware of the methamphetamine on the speaker box in plain view in her bedroom or the smoking pipe found near her on the floor when she was arrested. She acknowledged her statement to a police officer

that as many as four or five visitors came to see Moseley for brief visits each day, but said she "pretty much stayed in the other room because it was a man thing, so to speak." At some point, she told Moseley she did not like him having so many visitors. Moseley "said 'Okay, no problem' and he just stayed gone more often" after this conversation. Davis denied that she was a methamphetamine user and said the blemishes on her skin were caused by a reaction to hairspray and perfume and by the fact that she was having her menstrual period on the day she was arrested.

A recording of a telephone call Moseley placed to Davis from jail was played for the jury. Moseley and Davis said they loved each other. Moseley said, "I've made some mistakes, I've done some things wrong, and uh, I'll make 'em up to you." The jury was also shown a letter Moseley wrote to Davis while he was in jail. In it, he wrote: "I have been saying since we got this shit throw at us, this all my doing . . . . I haven't gone to court yet! When I do I will let the court (judge) know, you are not involved. I am told today I got to court. I will tell the judge OK. Baby, I know how much we love each other. . . . Remember, I'll take all charges as soon as possible!" Moseley never told the court that Davis was not involved.

A police officer testified that Davis told him she believed Moseley was selling marijuana and that this explained his numerous visitors. At first, Davis told the officer she knew nothing about any methamphetamine in the apartment. After the officer told her she would be charged with possessing methamphetamine for sale, however, she said she had seen Moseley with methamphetamine in the apartment, as much as four ounces at a time. When Davis was questioned at trial about these statements, she denied making them. She claimed she told officers only that she thought Moseley smoked marijuana.

The jury found both defendants guilty of possessing methamphetamine for sale, opening or maintaining a place for selling, giving away or using a controlled substance, and possessing drug paraphernalia. Both defendants were found not guilty of possessing marijuana for sale but convicted of the lesser-included offense of simple possession of marijuana. Moseley was found guilty of possessing ammunition while prohibited to do so. Both defendants' enhancement allegations were found true by the court.

The court sentenced Moseley to six years eight months in prison. This consisted of the middle term of two years for possessing methamphetamine for sale; a three-year enhancement pursuant to Health and Safety Code section 11370.2, subdivision (a); a one-year enhancement pursuant to Penal Code section 667.5, subdivision (b); and an eight-month term (one-third of the middle term) for possessing ammunition. The court imposed a concurrent

two-year term and a concurrent one-year prior-prison-term enhancement for opening or maintaining a place for the sale or use of a controlled substance. It imposed a 90-day concurrent sentence for possession of marijuana and a 30-day concurrent sentence for possession of drug paraphernalia.

The court sentenced Davis to two years eight months in prison, consisting of the lower term for possessing methamphetamine for sale, doubled because of the prior robbery, which was a strike within the meaning of the three strikes law. The court imposed a concurrent sentence of two years eight months for opening or maintaining a place for the sale or use of a controlled substance. There was no additional term for the misdemeanor convictions of possessing marijuana and possessing drug paraphernalia.

## DISCUSSION

*I.–III.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*IV. Penal Code Section 654*

Moseley contends that the concurrent sentence imposed for opening or maintaining a place for selling, giving away, or using a controlled substance should be stayed pursuant to Penal Code section 654. We disagree.

█ Penal Code section 654, subdivision (a), provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." This statute bars multiple punishment not only for a single criminal act but for a single indivisible course of conduct in which the defendant had only one criminal intent or objective. (*People v. Bauer* (1969) 1 Cal.3d 368, 376 [82 Cal.Rptr. 357, 461 P.2d 637]; *In re Ward* (1966) 64 Cal.2d 672, 675–676 [51 Cal.Rptr. 272, 414 P.2d 400]; *Neal v. State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839].) We review under the substantial-evidence standard the court's factual finding, implicit or explicit, of whether there was a single criminal act or a course of conduct with a single criminal objective. (*People v. Coleman* (1989) 48 Cal.3d 112, 162 [255 Cal.Rptr. 813, 768 P.2d 32]; *People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1408 [273 Cal.Rptr. 253].) As always, we review the trial court's conclusions of law de novo. (*Hill v. City of Long Beach* (1995) 33 Cal.App.4th 1684, 1687 [40 Cal.Rptr.2d 125].)

---

*See footnote, *ante*, page 1598.

We have located no published case involving the denial or imposition of a stay under Penal Code section 654 where the two offenses were possession for sale and opening or maintaining a place; however, *People v. Green* (1988) 200 Cal.App.3d 538 [246 Cal.Rptr. 164] is helpful. The convictions at issue there were for simple possession of cocaine, maintaining a house for selling, giving away or using cocaine, and using a building designed to suppress law enforcement entry (i.e., a house fortified with metal doors and window bars). (*Id.* at p. 541.) The defendant argued that the sentences for the first two offenses should be stayed because he committed them pursuant to the same criminal objective as he had in committing the third. (*Id.* at p. 543.) The Court of Appeal disagreed. Based on the evidence, it identified a separate criminal objective for each offense: For simple possession, the objective was personal use; for maintaining a place, the objective was selling cocaine to others and using it with them; and for using a building designed to suppress entry, the objective was to manufacture and package cocaine in a place difficult for police to enter. (*Id.* at pp. 544–545.)

■ It is true that in *Green* the appellate court could point to the separate objectives of possession for *personal* use and maintaining a place for *others'* use, while here the possession and the maintaining of a place were both for the purpose of sale. In spite of this, we believe there was substantial evidence to support the trial court's implicit finding of separate objectives here. Moseley's possession of the nine bags of methamphetamine for the purpose of sale was comparable to a store owner's possession of his or her current inventory. The owner's objective in possessing it is to sell it. The owner's objective in maintaining the store, however, is different from and independent of this intent. He or she intends to provide a place for selling his or her future inventory on an ongoing basis, regardless of whether the current inventory is ever sold or not. The evidence showed that Moseley maintained the apartment with the intent of continuously providing a location for meeting as many as four or five buyers a day and selling methamphetamine to them. This was independent of the objective of selling the nine particular bags in his possession on the day of his arrest. Therefore, we conclude that section 654 did not require the court to stay the sentence for either offense. (See also *People v. Goodall* (1982) 131 Cal.App.3d 129, 147–148 [182 Cal.Rptr. 243] [possessing precursor chemicals with intent to manufacture PCP, manufacturing PCP, and possessing PCP for sale each had separate objectives]; *People v. Fortier* (1970) 10 Cal.App.3d 760, 765–766 [89 Cal.Rptr. 210] [selling quantity of drugs and possessing additional quantity for sale had separate objectives].)

## *DISPOSITION*

The trial court shall strike the one-year sentence enhancement imposed pursuant to Penal Code section 667.5 for count three, opening or maintaining

a place for the purpose of selling, giving away, or using a controlled substance. The court shall prepare an amended abstract of judgment and forward it to the appropriate prison authorities. In all other respects, the judgment is affirmed.

Vartabedian, Acting P. J., and Hill, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 28, 2008, S166422.