Filed 5/4/15  P. v. Bain CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>MARIO LAFAYETTE BAIN,<br><br>　　　Defendant and Appellant. | B255181<br><br>(Los Angeles County<br>Super. Ct. No. BA415663) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Bob S. Bowers, Jr., Judge.  Affirmed.

Elana Goldstein, under appointment by the Court of Appeal, for Defendant and Appellant Christopher Alvara.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Mario Lafayette Bain (defendant) appeals from his conviction of possession of narcotics for sale, challenging only the denial of his "*Pitchess*" motion[1] for the discovery of information in the personnel files of three officers from the Los Angeles Police Department. As we conclude that the trial court did not abuse its discretion in denying the motion, we affirm the judgment.

## BACKGROUND

### Procedural history

In an amended information defendant was charged in count 1 with the sale, transportation, or offering to sell a controlled substance in violation of Health and Safety Code section 11352, subdivision (a), and in count 2, with possession for sale of cocaine base in violation of Health and Safety Code section 11351.5. As to both counts, the information alleged that defendant had suffered two prior serious or violent felony convictions within the meaning of the "Three Strikes" law (Pen. Code, §§ 667, subd. (d), 1170.12, subd. (b))[2] and section 1170, subdivision (h)(3). It was further alleged as to both counts that defendant had served four prior prison terms within the meaning of section 667.5, subdivision (b) and had suffered five prior felony convictions within the meaning of section 1203, subdivision (e)(4).

A jury acquitted defendant of count 1, but found him guilty in count 2 as charged. Defendant waived trial on the prior convictions and admitted the allegations. The trial court struck the punishment as to one of the prior strike convictions and imposed a second-strike sentence.[3] On March 25, 2014, the trial court sentenced defendant to a total term of 10 years in state prison, comprised of the middle term of four years, doubled pursuant to the Three Strikes law, plus consecutive terms of one year each for two of the prior prison terms. Defendant was given presentence custody credit of 211 actual days,

---

[1] See *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*); Penal Code sections 832.7 and 832.8; Evidence Code sections 1043 through 1045.

[2] All further statutory references are to the Penal Code unless indicated otherwise.

[3] See section 1385, subdivision (c)(1).

plus 210 days of conduct credit. Defendant was ordered to pay mandatory fines and fees, and to register under Health and Safety Code section 11590.

Defendant filed a timely notice of appeal.

### *Pitchess* motion

Prior to trial, defendant brought a *Pitchess* motion seeking information in the personnel records of three police officers, Williams, McCauley, and Calderon, relating to any alleged conduct amounting to excessive force or dishonesty. Attached to the motion was a copy of the arrest report, signed by Officer Williams and Detective Kanchanamongkol, in which Officer Williams reported that on August 27, 2013, at about 8:15 p.m., he was working undercover in plain clothes with the Department's Narcotics Task Force, near the intersection of Sixth Street and San Julian Street in Los Angeles. The team consisted of approximately 15 officers.

As Officer Williams walked west on the south sidewalk of Sixth Street he encountered defendant, who walked toward him and said, "Cavi cavi," which is street vernacular for rock cocaine. Officer Williams replied, "I need a dub," which is street vernacular for $20 worth of narcotics. Defendant replied, "Yeah, I have to go to my ass for that amount," as he reached into his rear waistband area and sat down in a nearby wheelchair. Defendant produced a clear plastic bag containing numerous smaller bindles of off-white solids resembling rock cocaine. He then extracted one of the bindles and gave it to Officer Williams after the officer handed him a prerecorded $20 bill. Shortly after Officer Williams gave the predetermined "buy" signal to other officers who had observed the transaction, defendant was detained by Officers Lozano and Nguyen and then arrested. From the seat of the wheelchair Officer McCauley recovered 111 plastic bindles containing off-white solids resembling rock cocaine. Officer Nguyen found currency totaling $176 on defendant's person. The $176 included two $20 bills, three $10 bills, seven $5 bills and 69 one dollar bills, but the prerecorded $20 bill was not found, despite a search of the area by the responding officers. Detectives Mossman, Kanchanamongkol, and Garde monitored Officer Williams's transmission throughout his interaction with defendant via a one-way transmitter.

3

Defense counsel supported the motion with her declaration, which included the following paragraph: "Defendant Bain was walking on the corner of Wall St. and 6th, in the city and county of Los Angeles. Defendant denies saying the words 'Cavi, Cavi' to anyone. Defendant never heard anyone, including an undercover officer, say to him 'I need a dub.' Defendant denies ever having a conversation with anyone, which consisted of him saying 'yeah, I have to go to my ass for that amount.' Defendant was walking down the street, minding his own business, when the police stopped and searched him. The police did not find any illegal drugs on him during the search. Defendant denies ever sitting in a wheelchair. Defendant denies ever owning or possessing a wheelchair, or having sat in one on the day of his arrest. Defendant did not reach into his waist band area with his right hand, and did not remove a large clear plastic bag containing numerous off white solids resembling rock cocaine. Defendant adamantly denies ever giving anyone one [*sic*] a small clear plastic bindle containing an off white solid resembling rock cocaine in exchange for $20.00. Defendant did not take or accept a twenty dollar bill from anyone. Defendant did not sit in a wheelchair at any time. Defendant was walking on the street when officers rushed him, searched him, failed to find illegal substances on his person, but arrested him anyway."

Counsel also stated on information and belief that Officers Williams, McCauley, and Calderon all lied about the events, that that this would be the defense raised at trial.

The trial court denied the *Pitchess* motion. The court acknowledged the low threshold for showing good cause, but found that defendant's showing was merely a denial.

## DISCUSSION

Defendant contends that the trial court abused its discretion in denying the *Pitchess* motion, and asks that we remand for an in camera hearing concerning the officers' personnel records.

"[O]n a showing of good cause, a criminal defendant is entitled to discovery of relevant documents or information in the confidential personnel records of a peace officer accused of misconduct against the defendant. [Citation.]" (*People v. Gaines* (2009) 46

4

Cal.4th 172, 179 (*Gaines*), citing Evid. Code, § 1043, subd. (b); *City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 84 (*City of Santa Cruz*); *Pitchess, supra*, 11 Cal.3d 531.) "If the defendant establishes good cause, the court must review the requested records in camera to determine what information, if any, should be disclosed. [Citation.]" (*Gaines, supra*, at p. 179, citing *Chambers v. Superior Court* (2007) 42 Cal.4th 673, 679.)

Trial courts have broad discretion in ruling on such motions and should carefully balance the conflicting, substantial interests of the officers as well as the defendant. (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1043.) The trial court's decision is reviewed under an abuse of discretion standard. (*People v. Cruz* (2008) 44 Cal.4th 636, 670.) Under that standard, judicial discretion is abused only when the court exceeds the bounds of reason under all of the circumstances by making an arbitrary or capricious determination. (*People v. Giminez* (1975) 14 Cal.3d 68, 72.)

The required showing of good cause may be established by defense counsel's declaration, which "must propose a defense or defenses to the pending charges." (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1024 (*Warrick*).) Counsel's declaration must set forth a "specific factual scenario" establishing a "plausible factual foundation" for the allegations of police misconduct. (*City of Santa Cruz, supra*, 49 Cal.3d at pp. 84-86; see also *Warrick, supra*, at p. 1019.) This does not mean that the trial court determines whether the potential defense is credible or persuasive. (*Gaines, supra*, 46 Cal.4th at p. 182; see *Warrick*, at p. 1026.) In this context, "plausible" means that defendant's scenario could or might have occurred and that it is internally consistent. (*Warrick*, at pp. 1016, 1025-1026.)

Although the standards for making a showing of good cause are "relatively relaxed" under the statutory scheme, defendant must "establish not only a logical link between the defense proposed and the pending charge, but also . . . articulate how the discovery being sought would support such a defense or how it would impeach the officer's version of events." (*Warrick, supra*, 35 Cal.4th at p. 1021.) "These requirements ensure that only information 'potentially relevant' to the defense need be

5

brought by the custodian of the officer's records to the court for its examination in chambers. [Citations.]" (*Id*. at p. 1024.) The "factual scenario, depending on the circumstances of the case, may consist of a denial of the facts asserted in the police report." (*Id*. at pp. 1024-1025; see also *Garcia v. Superior Court* (2007) 42 Cal.4th 63, 71-72 (*Garcia*) [simple denial or alternative version, depending on circumstances].)

Counsel's declaration consisted of a statement that defendant denied most of the material portions of the police report, concluding that Officers Williams, McCauley, and Calderon all lied about the events, and that this would be the defense raised at trial. The only affirmative facts were: "Defendant was walking down the street, minding his own business, when the police stopped and searched him"; and "Defendant was walking on the street when officers rushed him, searched him, failed to find illegal substances on his person, but arrested him anyway." Contrary to defendant's assertion, such facts were not alternative, additional, different, or inconsistent with those in the police report. According to the police report, defendant was indeed walking when he was approached, officers detained him, and the narcotics were found on the wheelchair.

We agree with the trial court that counsel's declaration amounted to no more than a denial of the facts stated in the police report. Defendant contends that denial of the facts in the police report is sufficient to show good cause, and that simple denials were held to be sufficient in *Warrick* and in the case *Warrick* cited as an example, *People v. Hustead* (1999) 74 Cal.App.4th 410 (*Hustead*). We disagree. In both cases, the defendant offered a factual scenario that provided a foundation for his claim of officer misconduct. In *Warrick*, the police report stated that three police officers on patrol noticed defendant standing next to a wall holding a baggie containing off-white solids; the officers approached; the defendant fled, discarding off-white lumps resembling rock cocaine; one of the officers retrieved 42 lumps from the ground; and when the two other officers arrested the defendant after a short pursuit, he held an empty baggie in his hand and had $2.75 cash in his pockets. (*Warrick, supra*, 35 Cal.4th at p. 1016.) Defense counsel's declaration did in fact suggest an alternate version of the events, explaining that the defendant fled when the officers got out of the patrol car, because he feared an arrest

on an outstanding parole warrant, and when the officers caught up with him "'people [were] pushing and kicking and fighting with each other'" as they collected rock cocaine from the ground; two officers retrieved some of the rocks; when one of them told the defendant he must have thrown it, defendant denied possessing or discarding any rock cocaine, and explained he was in the area to buy cocaine from a seller there. (*Id*. at p. 1017.) Defense counsel linked this version to the potential defense by suggesting "that the officers, not knowing who had discarded the cocaine, falsely claimed to have seen defendant, who was running away, do so." (*Ibid*.) In *Hustead*, the police report described in detail a high-speed automobile chase by a solo patrol officer; in addition to denying he drove in the manner described by the report, the declaration set forth that defendant drove a different route, which provided the factual foundation for claiming that the officer made false accusations. (*Hustead, supra*, at pp. 412-413, 416-417.)

We reject any suggestion in defendant's argument that a simple denial of the police report account is always sufficient to show good cause. As explained in *Warrick* and *Garcia*, whether a denial alone is sufficient depends upon the circumstances. (*Warrick, supra*, 35 Cal.4th at pp. 1024-1025; *Garcia, supra*, 42 Cal.4th at pp. 71-72.) The circumstances in this case closely resemble those in *People v. Thompson* (2006) 141 Cal.App.4th 1312 (*Thompson*), which was decided after *Warrick*. In *Thompson*, the police report noted that an undercover officer, wearing a wire monitored by two detectives, purchased narcotics from the defendant while several officers watched the transaction; afterward, another officer found the buy money in the defendant's possession. (*Thompson, supra*, at p. 1317.) "A declaration from defense counsel stated that 'the officers did not recover any buy money from the defendant, nor did the defendant offer and sell drugs to the undercover officer.' The 'officers saw defendant and arrested him because he was in an area where they were doing arrests.' When 'defendant was stopped by the police and once they realized he had a prior criminal history they fabricated the alleged events and used narcotics already in their possession and attributed these drugs to the defendant.' The charges 'are a fabrication manufactured by the officers to avoid any type of liability for their mishandling of the situation and to

7

punish the defendant for being in the wrong area, at the wrong time and for having a prior criminal history. . . .'" (*Ibid*.)

The *Thompson* court affirmed the trial court's denial of the *Pitchess* motion because the declaration merely denied the elements of the offense, without presenting a factual account of the scope of the alleged police misconduct, explaining the defendant's own actions in a manner that supported his defense, suggesting a nonculpable reason for his presence in an area where drugs were being sold or for being singled out by the police, or asserting "any 'mishandling of the situation' prior to his detention and arrest." (*Thompson, supra*, 141 Cal.App.4th at p. 1317.) Similarly here counsel's declaration offered no factual scenario suggesting a nonculpable reason why defendant was in the area of suspected drug activity, why he had $176 in the denominations found on him, or why the officers might have singled him out; nor did it present any other facts that could support a defense that a transaction observed by 15 police officers and two detectives was a total fabrication.

Defendant suggests that we disagree with *Thompson*, because the California Supreme Court later confirmed in *Garcia* that "[d]epending on the circumstances of the case, the scenario may be a simple denial of accusations in the police report or an alternative version of what might have occurred. [Citation.]" (*Garcia, supra*, 42 Cal.4th at p. 72.) *Garcia* did not describe the circumstances that might justify a simple denial or what facts would be a sufficient scenario, as the issue in that case was whether defense counsel's declaration was properly filed under seal. (See *id*. at p. 68.) Further, our high court also confirmed that it remained necessary to present a plausible factual foundation that establishes a "'logical link between the defense proposed and the pending charge,'" and that defense counsel's declaration should "'articulate how the discovery being sought would support such a defense or how it would impeach the officer's version of events.'" (*Id*. at pp. 71-72, quoting *Warrick, supra*, 35 Cal.4th at pp. 1021, 1024-1026.)

In any event, *Thompson* is not at odds with the holdings of *Warrick* or *Garcia*. The *Thompson* court distinguished the facts from those of *Warrick*, pointing out that the defendant in *Warrick* did not simply deny the facts alleged in the police report, but

8

offered an alternate reason for his flight from officers, for the presence of the rock cocaine on the ground, and for the officer's belief that it had been thrown by the defendant. (*Thompson, supra*, 141 Cal.App.4th at pp. 1317-1318, citing *Warrick, supra*, 35 Cal.4th at pp. 1016-1017.) The *Thompson* defendant did not do so, and defendant did not do so here.

Defendant argues that he did in fact present an alternative version by stating that he had been "walking down the street, minding his own business, when the police stopped and searched him." An *alternative* version would be a different version. As defendant's explanation was consistent with the accusation that he was walking down the street, it is not an alternative version. Similarly, defendant contends that an alternative version was presented by counsel's statement that the police failed to find drugs on defendant's person. This was not an alternative version, as the police report contains the fact that the narcotics were recovered from the seat of the wheelchair.

Finally, defendant argues that a possible defense based upon fabrication is supported by the statement in the police report that the buy money, a prerecorded $20 bill, was not found despite a search by chase officers. To the extent that the failure to find the buy money can be construed as a "'mishandling of the situation' prior to [defendant's] detention and arrest," it remains that the declaration failed to present any factual scenario that might help to explain the scope of the alleged fabrication. (*Thompson, supra*, 141 Cal.App.4th at p. 1317.) Defendant made no request as in *Garcia*, to file defense counsel's declaration under seal or to redact attorney work product or privileged information; he simply failed to provide any facts relating to defendant's nonculpable reason for being in the area of suspected drug activity with $176 in the denominations found on him, or give any reason why the officers might have singled him out. Under such circumstances we find no merit to the suggestion that a *truthful* statement in the police report, relating to possible misconduct or negligence by one or more of the six chase officers after defendant's arrest, can be sufficient by itself to provide a "specific factual scenario" establishing a "plausible factual foundation" for the

9

allegations of police misconduct.  (*City of Santa Cruz, supra*, 49 Cal.3d at pp. 84-86; see also *Warrick, supra*, 35 Cal.4th at p. 1019.)

In sum, defendant has failed to demonstrate that the circumstances raised in this case amounted to anything other than a mere denial of the facts asserted in the police report.  Thus, we find no abuse of discretion in the trial court's refusal to examine or order the disclosure of the officers' personnel records.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
                CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
HOFFSTADT