Filed 10/5/16  P. v. Veronokis CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GEORGE SPYRO VERONOKIS,<br><br>    Defendant and Appellant. | C080315<br><br>(Super. Ct. No. 14F1496) |

A jury convicted defendant George Spyro Veronokis of maintaining a place to sell or use heroin (Health & Saf. Code, § 11366),[1] possession of heroin for sale (§ 11351), possession of marijuana for sale (§ 11359), furnishing heroin (§ 11352, subd. (a)), and two counts of possession of heroin (§ 11350, subd. (a)).  The trial court sentenced him to serve six years four months in state prison.

---

[1]    Undesignated statutory references are to the Health and Safety Code.

1

On appeal, defendant contends: (1) the trial court erred in denying his *Pitchess*[2] motion; (2) there is insufficient evidence to support the furnishing conviction; (3) Penal Code section 654 bars a separate punishment for the furnishing and the maintaining a place offenses; and (4) there is a sentencing error in the minute order and abstract of judgment. We conclude the trial court did not abuse its discretion in denying the *Pitchess* motion, substantial evidence supports the furnishing conviction, and Penal Code section 654 did not bar punishment for both the furnishing and maintaining a place counts. However, there is a sentencing error in the minute order and abstract of judgment that needs to be corrected. Accordingly, we order a correction to the minute order and abstract of judgment. In all other respects, the judgment is affirmed.

BACKGROUND

### Prosecution Evidence

On October 23, 2013, Shasta County Sherriff's Deputies Michael Nelson and Caleb Macgregor conducted a probation search of defendant's residence. Deputy Macgregor entered the garage and found defendant with Nick Taylor and Douglas Lamphers. He smelled a type of smoke that had a pungent odor not associated with cigarettes. On the counter were straws and tinfoil with burn marks and residue, items consistent with heroin use.

Deputy Macgregor detained and searched defendant, finding two baggies of heroin and what appeared to be a marijuana bud. Tinfoil with burned residue that was consistent with smoking heroin and/or other narcotics was found in a trash can in defendant's bedroom. In the alcove of a window in defendant's room, Deputy Macgregor found a storage container with marijuana packaged in a baggie, as well as

---

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

2

a toot straw, a baggie containing heroin residue, and a plastic container with plastic baggies. About five ounces of marijuana was found during the search. Based on his training and experience, Deputy Macgregor concluded the marijuana and heroin were possessed for the purpose of sale.

Defendant told Deputy Macgregor he was a heroin user who separated his heroin into single-dose baggies to keep track of his consumption. He also claimed to have a medical marijuana recommendation. As he was driving defendant to the station, Deputy Macgregor overheard defendant tell Deputy Nelson that he sold heroin to fund his own habit. In Deputy Macgregor's experience, addicts will buy large quantities of the drug to get a bulk purchase savings, and then sell some of the drug in smaller lots at a higher price.

Deputy Nelson and other deputies conducted another search of defendant's residence on February 19, 2014. Deputy Nelson found tinfoil with burned residue of either pills or heroin in defendant's bedroom. The bedroom also had a Tupperware container with 0.2 gram of crystal methamphetamine. A small, locked metal box contained 0.235 gram of heroin, and 0.8 gram of heroin was in a contact lens case. Other deputies searched defendant and found a baggie containing 1.5 gram of heroin. In Deputy Nelson's opinion, the heroin was possessed for sale. A large amount of cash was found in a safe, but this was later determined to be proceeds from an insurance settlement.

As he was being transported to jail, defendant told Deputy Nelson he used a gram of heroin every day. He was "fronted" four grams of heroin every day, and would sell what he did not use.

During the time between the two searches, defendant's neighbors Jesseca Root and Frank Hokema noticed unusual activity at defendant's home. Root observed constant

3

traffic going to defendant's house. Hokema saw "quite a bit of activity," as it was "like living next to a drive-through at McDonald's. There's a constant flow of traffic that's constantly coming down." Vehicles would park in front of defendant's house and stay for only a few minutes. People Hokema thought were "more familiar" would enter defendant's garage and sit there for awhile. Defendant set up tables in the garage where visitors would sit.

Deputy Nelson testified as to the meaning of texts found on defendant's cell phone. A text sent to defendant, "[w]hat up G? Wanna burn? Got some cash," meant the sender wanted to smoke or burn something because he had money. A text sent later by defendant asked, "how much was you looking for?" indicated he was awake and wanted to know how much the person was talking about buying or selling. The answer, "[l]ike a dub or 30. You at home? I'll swing by," meant the sender was looking for 0.2 or 0.3 grams of methamphetamine or heroin, although it could also refer to an amount of money.

Deputy Nelson also testified regarding the contents of Facebook conversations involving defendant's account. On September 5, 2013, a message sent from defendant's account read, "I heard you been fucking up doing heroin and shit. Why[?]" After getting a response, defendant's account sent a message stating the sender "hustle[s] it out here," meaning he dealt heroin in the area. On September 1, 2013, defendant's account received the query, "What you need?" The reply was, "Some black," a reference to heroin, and he was ready to buy it once a week. A message he needed "a new connect," that is, a new drug supplier, was also sent through defendant's account. Another message from defendant's account indicated the sender needed a new supplier quickly because he was "almost out and [he] can't afford losing [his] people," as they would buy heroin from another person.

4

*The Defense*

A defense investigator testified he was familiar with the location of defendant's house, and, after examining photographs of the area, he could not see defendant's home from Hokema's property. The investigator also could not see the front of defendant's property from Root's home.

*The Pitchess Motion*

Defendant filed a pretrial *Pitchess* motion. Counsel's declaration in support of the motion stated a primary defense to the maintaining a place for using or selling heroin and possession of heroin for sale counts was that Deputy Nelson "provided false statements in his report, more specifically, that Deputy Nelson fabricated admissions of [defendant] with respect to drug sales." Counsel asserted on information and belief defendant "never admitted to selling heroin every day, nor did he specify that he was buying or being fronted 4 grams of heroin every day, as is falsely stated in Deputy Nelson's report. (See Exhibit A, attached.)" The motion sought "the names and contact information of individuals who have made complaints against Deputy Nelson for providing false information in police reports." Counsel alleged the information sought was material to impeach Deputy Nelson's testimony because it would show he provided "false information in his police reports."

Attached to the motion was Exhibit A, the report from Deputy Macgregor for the October 2013 search. The report noted, after reading defendant his *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694] warnings, Deputy Macgregor asked him why the heroin found on defendant was in two separate baggies. Defendant said he kept the packages separate so he could track how much heroin he used. Defendant also said he had a medical recommendation for the marijuana and it was packaged separately because each package contained separate types of marijuana. While Deputies Macgregor and

5

Nelson transported defendant and Lamphers to jail, defendant told Deputy Nelson he had been selling heroin. Defendant "would not say how long he had been selling heroin but did state he was selling to help supply his own heroin habit."

County counsel filed an opposition asserting the motion should be denied because the declaration was "merely a series of conclusory denials," and did not provide an "alternate version of the facts or a plausible scenario justifying an in camera review of the Deputy's records."

At the hearing on the motion, the trial court said, "there appears to me to be an insufficient declaration on the statement which provides a plausible alternative explanation." In response to the tentative ruling, defense counsel said, "I tried to streamline my declaration. The situation here is pretty simple, we have a couple of officers who are involved in two cases who have said that [defendant] made admissions to critical information with respect to the charges here. [Defendant] denies that. [¶] I could supplement my declaration by saying when [defendant] was being driven to jail and Deputy Macgregor said that he made an admission -- a spontaneous admission of sales, he did not. Rather than simply saying as I do in my declaration that was fabricated and he didn't say it or any other case, I could say he was or was not informed of his *Miranda* rights and spoke to Deputy Nelson he had a conversation and he never said that he admitted to sales and that was fabricated. [¶] So I believe there's good cause. Perhaps I need to add a few more statements to contextualize it, but it's a pretty simple issue--."

The court replied, "Well, contextualizing it [to] say I was in the back of a police car and he made a spontaneous statement of something else I don't think satisfies the requirement that an alternative plausible information contrary to the allegations needs to be set forth within the declaration" based on information and belief. When defense

counsel asked what type of "alternative plausible explanation" comes in, the court replied the declaration came squarely within *People v. Sanderson* (2010) 181 Cal.App.4th 1334 (*Sanderson*). After citing another case where a denial of the officer's statement was sufficient, the trial court declined counsel's offer for an oral supplement of the declaration, "mainly because I want there to be an intelligent opposition or reply to that, if that is required." It then denied the motion without prejudice. Defendant did not file another *Pitchess* motion or a supplement to the original *Pitchess* motion.

## DISCUSSION

### I

### *Denial of Pitchess Motion*

Defendant contends the trial court erred in finding he had not established good cause for an in camera review of Deputy Nelson's personnel record for citizen complaints that he provided false information. We conclude the trial court did not abuse its discretion in denying the *Pitchess* motion.

To balance a defendant's right to discovery and a peace officer's right to privacy, the *Pitchess* procedures provide the defense must first show "good cause" for discovery of peace officer records that triggers an in camera hearing by the trial court to determine whether any information in the records should be disclosed. (See *City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 81-84; Evid. Code, §§ 1043-1047, Pen. Code, §§ 832.7, 832.8.)

The defense must show "good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation." (Evid. Code, § 1043, subd. (b)(3).) Our Supreme Court has described this as a "relatively low threshold" and a "relatively relaxed" standard. (*City of Santa Cruz, supra*, 49 Cal.3d at pp. 83-84.)

7

"To show good cause as required by [Evidence Code] section 1043, defense counsel's declaration in support of a *Pitchess* motion must propose a defense or defenses to the pending charges. The declaration must articulate how the discovery sought may lead to relevant evidence or may itself be admissible direct or impeachment evidence [citations] that would support those proposed defenses. These requirements ensure that only information 'potentially relevant' to the defense need be brought by the custodian of the officer's records to the court for its examination in chambers. [Citations.]" (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1024.)

The defense need only describe a "plausible factual foundation" for the claim of "specific police misconduct that is both internally consistent and supports the defense proposed to the charges." (*Warrick v. Superior Court, supra*, 35 Cal.4th at pp. 1025-1026.) This allows "courts to apply common sense in determining what is plausible, and to make determinations based on a reasonable and realistic assessment of the facts and allegations." (*People v. Thompson* (2006) 141 Cal.App.4th 1312, 1318-1319 (*Thompson*).) We review the trial court's denial of discovery of information from police personnel files for an abuse of discretion. (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 992.)

The trial court based its finding defendant failed to establish good cause on *Sanderson*. *Sanderson* involved a prosecution for criminal threats where two police officers heard the defendant deliver a threat to the victim in a telephone conversation. (*Sanderson, supra*, 181 Cal.App.4th at pp. 1336-1337.) The *Pitchess* motion sought discovery of the officers' personnel records for matters pertaining to dishonesty or falsifying police reports. (*Sanderson,* at p. 1338.) Defense counsel's declaration stated defendant denied making the statement attributed to him and records of dishonesty and

fabrication by the officers would be relevant to disprove the statements had been made. (*Ibid*.)  There was no police report attached to the motion.  (*Ibid*.)

The Court of Appeal in *Sanderson* noted the "defendant simply denied making the statement attributed to him; he did not deny making the phone call or engaging in a telephonic conversation" when "the police were present at the house." (*Sanderson, supra*, 181 Cal.App.4th at p. 1340.)  It found the defendant's claim he never made the incriminating remarks attributed to him in a testifying officer's report was not enough to establish good cause, at least not without a plausible " 'alternate version of the facts.' " (*Id.* at pp. 1340-1341.)  Since the "[d]efendant failed to present 'an alternate version of the facts' regarding the reason and nature of his telephonic exchange," it was within the trial court's discretion to determine that "defendant's version of events was not plausible 'based on a reasonable and realistic assessment of the facts and allegations.'  [Citation.]" (*Id.* at p. 1341.)

The *Sanderson* court found *Thompson* to be "particularly instructive." (*Sanderson, supra*, 181 Cal.App.4th at p. 1341.)  *Thompson* held the defendant "failed to show good cause for the requested discovery because he did not present a specific factual scenario that [was] plausible when read in light of the pertinent documents and undisputed circumstances.  [Citation.]" (*Thompson, supra*, 141 Cal.App.4th at p. 1316.)  There, the police claimed the defendant gave an undercover officer cocaine base in exchange for two prerecorded $5 bills.  (*Id*. at p. 1315.)  The officer was wired during the transaction, and several other officers who were part of the buy team watched and listened to the transaction.  (*Ibid.*)  The defendant was arrested by the other officers after the exchange was completed, and the prerecorded bills were found on his person.  (*Ibid*.)  Defense counsel moved for discovery of the officers' personnel records, stating in a declaration the defendant did not sell drugs to the officer and the officers did not recover

9

any buy money from the defendant. (*Id.* at p. 1317.) The declaration in support of the motion claimed the defendant was in an area where the officers were making arrests, and the officers fabricated the events when they realized he had a prior criminal history. (*Ibid.*)

The *Thompson* court concluded the defendant's factual scenario was not plausible, "because it does not present a factual account of the scope of the alleged police misconduct, and does not explain his own actions in a manner that adequately supports his defense. Thompson, through counsel, denied he was in possession of cocaine or received $10 from Officer Saragueta. But he does not state a nonculpable explanation for his presence in an area where drugs were being sold, sufficiently present a factual basis for being singled out by the police, or assert any 'mishandling of the situation' prior to his detention and arrest. Counsel's declaration simply denied the elements of the offense charged." (*Thompson, supra*, 141 Cal.App.4th at p. 1317.)

We conclude the situation here is similar to *Sanderson, supra,* 181 Cal.App.4th 1334 and *Thompson*. The declaration supporting defendant's motion simply denied defendant made certain incriminating statements to Deputy Nelson and concludes Deputy Nelson fabricated them. The attached police report, which came from Deputy Macgregor rather than Deputy Nelson, does not relate any statement from Deputy Nelson regarding what defendant said. It does relate Deputy Macgregor heard defendant admit to Deputy Nelson he sold heroin to help support his heroin habit. Defendant's *Pitchess* motion did not seek discovery of Deputy Macgregor's records and did not assert he fabricated this statement. As in *Sanderson, supra,* 181 Cal.App.4th 1334 and *Thompson, supra,* 141 Cal.App.4th 1312, the declaration presented no factual basis explaining how

10

Deputy Nelson fabricated the admission Deputy Macgregor heard and related in his report.[3]

While defendant does not have to give a detailed or even credible factual account supporting the requested discovery, he must give some plausible factual account. Other than his denial of making the statement, the only facts are found in Deputy Macgregor's report. This report does not contain any facts that would support discovery as to Deputy Nelson's personnel records. Although defense counsel offered to orally amend this deficiency at the *Pitchess* hearing, the trial court declined but gave defendant leave to file a new motion. Counsel did not file a new motion. We conclude the trial court did not abuse its discretion by denying this factually deficient *Pitchess* motion.

## II

### *Sufficiency of the Evidence*

Defendant contends there is insufficient evidence to support his conviction for furnishing heroin. We conclude substantial evidence supports the furnishing heroin conviction.

" 'To determine sufficiency of the evidence, we must inquire whether a rational trier of fact could find defendant guilty beyond a reasonable doubt. In this process we must view the evidence in the light most favorable to the judgment and presume in favor

---

[3]     Deputy Nelson's trial testimony relating the admissions from defendant (that the declaration asserted was fabricated) is not relevant to our review of the trial court's ruling: "We normally review a trial court's ruling based on the facts known to the trial court at the time of the ruling. [Citation.]" (*People v. Cervantes* (2004) 118 Cal.App.4th 162, 176 [trustworthiness of statement].) A trial court considering a *Pitchess* motion must "apply common sense in determining what is plausible, and to make determinations based on a reasonable and realistic assessment of the facts and allegations." (*Thompson*, *supra*, 141 Cal.App.4th at pp. 1318-1319.) When we review such determination for an abuse of discretion, we must consider the "facts and allegations" as they were presented to the trial court at the time of the motion.

of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. To be sufficient, evidence of each of the essential elements of the crime must be substantial and we must resolve the question of sufficiency in light of the record as a whole.' [Citation.]" (*People v. Carpenter* (1997) 15 Cal.4th 312, 387.)

It is unlawful to furnish a controlled substance. (§ 11352, subd. (a).) Section 11016 provides: " 'Furnish' has the same meaning as provided in [former] Section 4048.5 of the Business and Professions Code." Business and Professions Code section 4048.5 was repealed and replaced by Business and Professions Code section 4026 (Stats. 1996, ch. 890, §§ 2, 3, pp. 4859-4865), which provides: " 'Furnish' means to supply by any means, by sale or otherwise."[4]

Defendant says the evidence does not support a finding that what Taylor and Lamphers appeared to have smoked in the garage was heroin, and even if it was heroin, there was no evidence defendant furnished it to them. He is wrong.

During the August 2013 search, Deputy Macgregor saw defendant, Taylor, and Lamphers in defendant's garage. The evidence shows heroin was in defendant's home; he had heroin in his possession and there was heroin residue in another room. The presence of the pungent smoke in the garage supports an inference something other than cigarettes had been smoked there recently. Deputy Macgregor gave an expert opinion that the straws and tinfoil with residue in the garage were consistent with heroin use that was further supported by the presence of tinfoil with heroin residue elsewhere in defendant's home. The jury could therefore reasonably infer heroin had been smoked in the garage and it had been smoked by the three occupants found there. Since the garage was in defendant's home and since defendant had heroin on his person and admitted

---

[4] Section 11016 has not been amended by the Legislature to reflect the change in the Business and Professions Code section.

12

using and selling the drug, the jury could also reasonably infer defendant furnished the heroin Taylor and Lamphers smoked in the garage with him.

## III

### *Penal Code Section 654*

The trial court imposed consecutive terms for the furnishing heroin and maintaining a place for selling or using heroin counts. Defendant contends the sentence for the maintaining count should have been stayed pursuant to Penal Code section 654 because the crimes shared a single intent, furnishing heroin to others. We conclude Penal Code section 654 did not bar punishment for both the furnishing heroin and maintaining a place counts.

In relevant part, Penal Code section 654 provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (Pen. Code, § 654, subd. (a).)

"[I]t is well settled that [Penal Code] section 654 applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. [Citation.] Whether a course of conduct is indivisible depends upon the intent and objective of the actor. If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one. [Citation.]" (*People v. Perez* (1979) 23 Cal.3d 545, 551.) "It is defendant's intent and objective, not the temporal proximity of his [or her] offenses, which determine whether the transaction is indivisible. [Citations.]" (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) "A trial court's implied finding that a defendant harbored a separate intent and objective for each

offense will be upheld on appeal if it is supported by substantial evidence. [Citation.]" (*People v. Blake* (1998) 68 Cal.App.4th 509, 512.)

In *People v. Moseley* (2008) 164 Cal.App.4th 1598 (*Moseley*), the defendant, who was convicted of possession of methamphetamine for sale (§ 11378) and maintaining a place for the use or sale of controlled substances, argued sentence on the maintaining count should have been stayed pursuant to Penal Code section 654 because the two crimes came from a single criminal objective (*Moseley,* at pp. 1599-1600). The Court of Appeal rejected the contention, finding: "Moseley's possession of the nine bags of methamphetamine for the purpose of sale was comparable to a store owner's possession of his or her current inventory. The owner's objective in possessing it is to sell it. The owner's objective in maintaining the store, however, is different from and independent of this intent. He or she intends to provide a place for selling his or her future inventory on an ongoing basis, regardless of whether the current inventory is ever sold or not. The evidence showed that Moseley maintained the apartment with the intent of continuously providing a location for meeting as many as four or five buyers a day and selling methamphetamine to them. This was independent of the objective of selling the nine particular bags in his possession on the day of his arrest. Therefore, we conclude that [Penal Code] section 654 did not require the court to stay the sentence for either offense. [Citations.]" (*Id*. at p. 1604.)

As in *Moseley, supra*, 164 Cal.App.4th 1598, the trial court here could reasonably conclude defendant's objective in the maintaining offense is to have an ongoing base of operations to sell heroin. The evidence and verdicts show defendant sold heroin; he admitted so much to Deputy Nelson, texts and Facebook messages showed he sold the drug over time, and he was convicted of possession of heroin for sale. There is no evidence defendant sold the heroin that was smoked in the garage and formed the basis of

14

the furnishing conviction.  The trial court could therefore conclude the intent behind the furnishing count was tied to personal use; defendant chose to share the heroin he was smoking in his garage with the two other people.  The trial court could also reasonably conclude the intent behind the maintaining count was to perpetuate an ongoing base of operations for the sale of heroin.

This conclusion is supported by the pleadings; the maintaining count was alleged to have been committed between October 23, 2013 and February 19, 2014, while the furnishing count was alleged to have happened on October 23, 2013.  The evidence also shows the maintaining offense continued long after the crime of furnishing was complete.  The texts and Facebook messages happened after the furnishing count, and the February 2014 search showed defendant maintained a place for heroin sales up until then.

Since defendant entertained different intents for the maintaining and furnishing counts, Penal Code section 654 did not bar sentencing defendant on both counts.

## IV

### *Correction of Minute Order and Abstract of Judgment*

The trial court imposed a six-year four-month prison term at sentencing. Defendant points out the August 27, 2015 minute order and the abstract of judgment reflect a six-year eight-month term and asks us to correct both.  The Attorney General agrees.

When there is a discrepancy between the oral pronouncement of a sentence and the written order, the criminal court's oral pronouncement controls because it "constitutes the rendition of judgment," whereas "the written document is ministerial."  (*People v. Freitas* (2009) 179 Cal.App.4th 747, 750, fn. 2; accord, *People v. Jones* (2012) 54 Cal.4th 1, 89 [oral pronouncement is judgment, and written abstract of judgment does

15

not add to or modify judgment as orally pronounced].)  Therefore, the minute order and the abstract of judgment must be corrected to reflect the oral pronouncement of the trial court.  (*People v. Zackery* (2007) 147 Cal.App.4th 380, 388, 393 [correction of abstract of judgment and corresponding minute order to reflect oral pronouncement by trial court].)

## DISPOSITION

The judgment is affirmed.  The trial court is directed to prepare a corrected minute order and corrected abstract of judgment reflecting a six-year four-month state prison term.  A certified copy of the corrected abstract of judgment shall be forwarded to the Department of Corrections and Rehabilitation.


                                         /s/                    
                              HOCH, J.



We concur:



         /s/                    
RAYE, P. J.



         /s/                    
MAURO, J.



16