Filed 11/27/24 P. v. Neal CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082696 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS316690) |
| BRYAN EDWARD NEAL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Marcella O. McLaughlin, Judge. Affirmed as modified.

Shay Dinata-Hanson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina, Christine Levingston Bergman, Warren Williams, and Kelley Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

Bryan Edward Neal appeals the judgment sentencing him to prison after a jury found him guilty of mayhem and aggravated assault and found

true a great bodily injury enhancement allegation attached to the assault charge. He contends the trial court erred by declining to impose the lower prison term on the assault conviction, to dismiss the enhancement, and to stay execution of the prison term imposed on the mayhem conviction. We reject the first two contentions but agree with the third. We shall modify the judgment to impose a stay of execution of the prison term imposed on the mayhem conviction and affirm the judgment as modified.

## I.

## BACKGROUND

### A.    *Facts*

One night in October 2020, D.G. was working at a convenience store when Neal's girlfriend, Ruby Castillo, entered and asked for beer. D.G. told Castillo no beer was available for sale, and Castillo started screaming. Neal heard the screaming, entered the store, and joined Castillo in demanding beer. After he walked to the back of the store and realized there was no beer for sale, he grabbed some candy and headed for the exit. D.G. pepper-sprayed Neal as he was exiting, and he stumbled outside the store. He heard D.G. and Castillo "tussling" and reentered the store to intervene. Neal kicked D.G. in the face six times and then pulled Castillo off D.G. He and Castillo then fled the scene. When they returned to retrieve their vehicle, police detained them.

D.G. was taken to a hospital where she underwent surgery to repair multiple fractures to the bones around her left eyeball and related soft tissue injuries. D.G. also suffered a fracture to her cheekbone, which required an implant; a fracture to her nose, which left her with a crooked nose and impaired breathing; and permanent damage to her vision and brain.

B.    *Charges and Trial*

The People charged Neal with mayhem (Pen. Code, § 203; subsequent section references are to this code), robbery (§ 211), and assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)).  They alleged that in committing the assault, Neal personally inflicted great bodily injury on D.G.  (§§ 1192.7, subd. (c)(8), 12022.7, subd. (a).)

Neal, D.G., and other witnesses testified at trial, and a surveillance video of his attack on her was played for the jury and admitted into evidence. Neal admitted he kicked D.G. in the head six times.  The jury found him guilty of mayhem and assault, found him not guilty of robbery, and found true the great bodily injury enhancement allegation attached to the assault charge.

In a separate bench trial, the court found true the aggravating circumstance that the mayhem and assault involved great violence, cruelty, viciousness, or callousness.  (Cal. Rules of Court, rule 4.421(a)(1).)  It based that finding on D.G.'s vulnerability in being restrained by Castillo during the attack and being much smaller than Neal, his repeated and targeted application of force to the most vulnerable part of D.G.'s body, and the serious and permanent injuries he inflicted on her.  The court found not true the aggravating circumstance that Neal engaged in violent conduct indicating he is a serious danger to society, on the ground he had no history of violent conduct.  (*Id.*, rule 4.421(b)(1).)

C.    *Sentencing*

The People asked the trial court to sentence Neal to the upper term of eight years on the mayhem conviction (§ 204) based on the danger he posed to society as evidenced by his violent and unprovoked attack on a helpless

3

victim.  They also asked the court to impose a concurrent term on the assault conviction and attached enhancement.

Neal asked the trial court to dismiss the great bodily injury enhancement based on its connection to mental illness, prior victimization, and childhood trauma.  (See § 1385, subd. (c)(2)(D), (E).)  Dismissal of the enhancement would remove the presumptive ineligibility for probation for a defendant who "willfully inflicted great bodily injury."  (See § 1203, subd. (e)(3).)  Neal asked the court to impose and stay execution of what he erroneously called "the low term" of three years on the assault conviction (see § 245 [assault by means of force likely to produce great bodily injury is punishable by imprisonment for two, three, or four years]), to stay the prison term on the mayhem conviction pursuant to section 654, and to grant him probation.  If the court did not dismiss the enhancement, he asked the court to sentence him to prison for what he erroneously stated was "the low term of 3 years for [m]ayhem" (see § 204 [mayhem is punishable by imprisonment for two, four, or eight years]) and to stay the sentence on the assault conviction under section 654.

In support of his request for dismissal of the enhancement, Neal attached to his sentencing memorandum a report from Todd D. Pizitz, Ph.D., a clinical and forensic psychiatrist who in June 2023 interviewed Neal and performed psychological tests and risk appraisals "to determine the nature and extent of his psychological functioning."  Pizitz reported Neal had "several major traumas in his upbringing" that "likely interfered with his development and functioning today," including "physical and emotional abuse," abandonment by his mother at age 12 and placement in foster care until age 19, and sexual abuse.  Pizitz reported another "traumatizing" event for Neal was the stillbirth of his son, after which he stopped working,

4

relapsed into drug use, and experienced symptoms consistent with posttraumatic stress disorder (e.g., disturbing flashbacks, negative emotions, and difficulty sleeping). Pizitz's list of "diagnostic impressions" included (1) posttraumatic stress disorder, (2) unspecified depressive disorder, (3) stimulant use disorder, (4) cannabis use disorder, and (5) alcohol use disorder. Pizitz reported that Neal never received treatment for posttraumatic stress disorder and instead "self-medicated with alcohol, cannabis, and methamphetamine at an early age." Pizitz assessed Neal's "risk for re-offense for violence in the future to be Low-Moderate."

The trial court stated it had received and considered the probation officer's report and the parties' sentencing memoranda. The court found that despite Neal's lack of criminal history, probation was not warranted because of "the seriousness of [his] conduct," "the seriousness of the [victim's] injuries," and "the public safety implications." The court found Neal's "disregard for the vulnerability of the victim and his relative strength and power over her" were "incredibly concerning as it relates to his ability to commit similar acts."

Turning to Neal's request to dismiss the great bodily injury enhancement, the trial court stated it was "trying to balance" its concern about the seriousness of Neal's attack on D.G. and his ability to commit similar acts "with some equity and fairness as it relate[d] to the arguments presented, in terms of his past history and his ability to make appropriate decisions." The court found Neal had presented evidence "suggestive enough" of a mental illness, namely, posttraumatic stress disorder. (See § 1385, subd. (c)(2)(D), (5).) The court found he also presented "evidence of prior victimization or childhood trauma," namely, sexual abuse and abandonment. (See *id.*, subd. (c)(2)(E), (6).) The trial court identified as another "triggering

5

incident for [Neal]" the death of his son about a month before the attack on D.G. The court found, however, that although Neal's mental illness, childhood trauma, and prior victimization contributed to his attack on D.G., they did not "substantially contribute[ ]" to the attack. (See *id.*, subd. (c)(5), (6).) The trial court noted Neal had no prior "incidents like this" during his adult life, and found the incident "was a violent crime of opportunity" in which he "took advantage" of a vulnerable victim whom he could have injured more seriously or even killed. The court also stated it had "a public safety concern" because it did not know whether Neal would commit another violent crime "if [he] were in a situation where [he] felt that force was the answer." The court did "not find good cause under [section] 1385 to strike the [enhancement]" and denied Neal's request that it do so.

The trial court next turned to imposition of a prison term. It "believe[d] it's a mid-term case not an upper-term case," in part because Neal had no criminal history as an adult and this was his first serious felony conviction. The court sentenced him to prison for the middle term of three years on the assault conviction (§ 245, subd. (a)(4)), plus a consecutive term of three years for the attached great bodily injury enhancement (§ 12022.7, subd. (a)). The court imposed a concurrent middle term of four years on the mayhem conviction. (§ 204.)

## II.

## DISCUSSION

Neal raises two claims of sentencing error in his opening brief. He contends the trial court erroneously refused to dismiss the great bodily injury enhancement. Neal also contends the court erroneously failed to apply a presumption in favor of imposition of the lower prison term on the assault conviction. In response to our request for supplemental briefing on the

6

propriety of imposition of a concurrent prison term on the mayhem conviction, Neal contends the court should have stayed execution of the term instead. We address each claim of error in turn.

A.      *Refusal to Dismiss Great Bodily Injury Enhancement*

Neal complains the trial court abused its discretion in refusing to dismiss the great bodily injury enhancement by erroneously finding his mental illness, childhood trauma, and prior victimization did not substantially contribute to his attack on D.G.; by erroneously finding dismissal of the enhancement would endanger public safety; and by failing to apply the presumption in favor of dismissal. We disagree.

Section 1385, subdivision (c)(1) authorizes a court to dismiss an enhancement "if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." "In exercising its discretion under this subdivision, the court shall afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present." (*Id.*, subd. (c)(2).) As relevant to this appeal, those circumstance include that "[t]he current offense is connected to mental illness," "prior victimization[,] or childhood trauma." (*Id.*, subd. (c)(2)(D), (E).) Proof of such circumstances "weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal . . . would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (*Id.*, subd. (c)(2).)

Our Supreme Court in *People v. Walker* (2024) 16 Cal.5th 1024 (*Walker*) recently resolved a conflict in the Courts of Appeal over whether proof of a mitigating circumstance under section 1385, subdivision (c)(2) created a presumption in favor of dismissal of an enhancement unless the

7

court found dismissal would endanger public safety. After Neal filed his opening brief, the Supreme Court rejected the position he advocated and held the statute "does not erect a rebuttable presumption in favor of dismissal that can only be overcome by a finding that dismissal endangers public safety." (*Walker*, at p. 1033.) "[I]f the court does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the enhancement. But ultimately, the court must determine whether dismissal is in furtherance of justice. This means that, absent a danger to public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.'" (*Id.* at p. 1036.) "[T]his 'furtherance of justice' [citation] inquiry requires a trial court's ongoing exercise of 'discretion' [citation]." (*Id.* at p. 1033.)

We review a court's decision on whether to dismiss an enhancement under section 1385 for abuse of discretion. (*Walker, supra*, 16 Cal.5th at p. 1029; *People v. Gonzalez* (2024) 103 Cal.App.5th 215, 225 (*Gonzalez*); *Nazir v. Superior Court* (2022) 79 Cal.App.5th 478, 490.) Such an abuse occurs when the court was unaware of its discretion to dismiss, considered impermissible factors or applied incorrect legal standards in declining to dismiss, or made a decision that was so arbitrary or irrational that no reasonable person could agree with it. (*People v. Carmony* (2004) 33 Cal.4th 367, 377–378 (*Carmony*); *Gonzalez*, at p. 225; *Nazir*, at p. 490.) The party attacking the court's sentencing decision has the burden to show an abuse of

8

discretion, and absent such a showing the decision will be upheld. (*Carmony*, at pp. 376; *People v. Pearson* (2019) 38 Cal.App.5th 112, 116.)

Neal argues the trial court abused its discretion in declining to give "great weight" to the evidence he offered concerning mitigating circumstances favoring dismissal of the great bodily injury enhancement (§ 1385, subd. (c)(2)) because, he says, the court erroneously found those circumstances did not substantially contribute to his commission of the crimes. The court acknowledged Neal had presented evidence of a "mental illness" (posttraumatic stress disorder), "prior victimization," and "childhood trauma" (sexual abuse and abandonment) within the meaning of the statute. (*Id.*, subds. (c)(2)(D), (E), (5), (6).) It also considered Neal's son's death to be "a triggering incident." Offering evidence of a mental illness, prior victimization, and childhood trauma was not by itself enough to make such circumstances "weigh greatly in favor of dismissing the enhancement," however. (*Id.*, subd. (c)(2).)

Neal also had to show his crimes were "connected to" the mitigating circumstances. (§ 1385, subd. (c)(2)(D), (E).) To do that, he had to present "relevant and credible evidence," which may include "evidence that [he] displayed symptoms consistent with the relevant mental disorder at or near the time of the offense" or "reports by qualified medical experts," that his mental illness, prior victimization, or childhood trauma "substantially contributed to [his] involvement in the commission of the offense." (*Id.*, subd. (c)(5), (6).)[1] By "use of the phrase 'substantially contributed,'" the

---

[1]  Neal asserts, "To the extent the court interpreted the legal standard for 'substantial contribution' to require display of childhood trauma and prior victimization 'at or near the time of the offense,' the court erred in limiting the scope of its discretion to that narrow window." He cites nothing in the trial court's remarks at the sentencing hearing to indicate the court

Legislature likely intended "that the factor plays some significant role in the commission of the crime or the defendant's involvement in it." (1 Couzens et al., Sentencing Cal. Crimes (The Rutter Group 2024) § 12:11, p. 808; cf. *Carpenter v. Superior Court* (2023) 93 Cal.App.5th 1279, 1306 [for purposes of causation " '[a] *substantial factor* is more than a trivial or remote factor' "].) As we shall explain, Neal did not establish the required nexus between the mitigating circumstances he relied on and his attack on D.G.

Neal argues "relevant and credible evidence" showed "[h]e was severely depressed and experiencing [posttraumatic stress disorder] symptoms," and this "trauma-related behavior substantially contributed to the offense." In an effort to establish he was experiencing such symptoms "at or near the time of the offense" (§ 1385, subd. (c)(5)), Neal points out that in the psychological evaluation Pizitz stated Neal had discussed his son's death and reported symptoms consistent with posttraumatic stress disorder. But Pizitz interviewed Neal more than two years after Neal's son's death and the attack on D.G.; and he wrote nothing about when Neal started to experience those symptoms, whether he experienced any symptoms at or near the time of the attack, and if so, whether and how they contributed to the attack. As other evidence he was experiencing posttraumatic stress disorder symptoms when he repeatedly kicked D.G. in the head, Neal cites an article from a medical journal for the proposition that posttraumatic stress disorder "is associated with a range of impulsive behaviors, including interpersonal aggression." This article does not appear to have been presented to the trial court and is not part of the appellate record, so we decline to consider it. (See, e.g., *People v. Jenkins* (2000) 22 Cal.4th 900, 952.) Even were we to concede an

interpreted the legal standard in that way, and we have found no such indication in our review of the reporter's transcript of the hearing.

10

association between posttraumatic stress disorder and interpersonal aggression as a general matter, that would tell us nothing about the specific contribution, if any, of Neal's mental illness to his attack on D.G. As supposedly "[c]onsistent" with that association, Neal cites his statements to the probation officer that "he was 'not in the right mind' " and "wished he 'could return in time and change' his actions in this matter." That vague statement about his mental state at the time of the attack and tepid expression of remorse more than two years later do not show that symptoms of his mental illness "substantially contributed" to his criminal conduct. (§ 1385, subd. (c)(5).)

Neal also argues Pizitz's report that he "was experiencing symptoms of depression and [posttraumatic stress disorder] related to his childhood trauma" shows the trial court erred by inferring that, because Neal had not previously participated in a similar violent incident, the trauma did not substantially contribute to his attack on D.G. According to Neal, "if anything, this particularly violent episode indicates [his] trauma and [posttraumatic stress disorder] were contributing to his behavior at a higher and more substantial level than before." We are not persuaded. In his report, Pizitz attributed Neal's posttraumatic stress disorder and "co-occurring disorders" to the abandonment and sexual abuse he experienced as a child and to the death of his son he experienced as an adult. But as we noted above, Pizitz reported nothing about whether Neal had symptoms of mental illness at or near the time of the attack on D.G. or whether such symptoms or underlying mental illness, prior victimization, or childhood trauma played any role in the attack. Without evidence about that role, Neal did not prove his mental illness, prior victimization, or childhood trauma "substantially contributed" to his attack on D.G. (§ 1385, subd. (c)(5), (6);

11

*People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1095, review granted Apr. 12, 2023, S278894 (*Ortiz*) [no error in trial court's finding defendant's mental illness did not substantially contribute to crime when no evidence he displayed symptoms at or near time of crime and no evidence linked symptoms to commission of crime].)

In sum, we conclude that "[e]ven if the evidence favorable to [Neal] is 'afford[ed] great weight' (§ 1385, subd. (c)(2)), the gaps in the evidentiary showing preclude a determination that the evidence compelled a finding in [his] favor." (*Ortiz, supra*, 87 Cal.App.5th at pp. 1095–1096, fn. 5, review granted.) Hence, Neal has not shown the trial court erred in finding he had not met his burden to prove a connection between his mental illness, prior victimization, or childhood trauma and the attack on D.G. that the court would have had to "weigh[ ] greatly in favor of dismissing the [great bodily injury] enhancement." (§ 1385, subd. (c)(2); see *Ortiz*, at p. 1095 & fn. 5, review granted.)

Our rejection of Neal's challenge to the trial court's finding that he had not proved the mitigating circumstances on which he relied requires rejection of his related contention the court erred in finding that the presumption in favor of dismissal triggered by those circumstances had been rebutted by the finding dismissal "would endanger public safety." (§ 1385, subd. (c)(2).) Without any mitigating circumstances to "weigh[ ] greatly in favor of dismissing the enhancement" (*ibid.*), no presumption arose that had to be rebutted. In any event, the presence of mitigating circumstances does not create a presumption in favor of dismissal of an enhancement that can be rebutted only by a finding dismissal would endanger public safety. (*Walker, supra*, 16 Cal.5th at p. 1033.) Regardless of the presence of enumerated mitigating circumstances or the absence of a finding that dismissal of an

enhancement would endanger public safety, "trial courts retain their discretion to impose an enhancement based on circumstances 'long deemed essential to the "furtherance of justice" inquiry.' " (*Ibid.*)

We also reject Neal's contention that in conducting the furtherance of justice inquiry the trial court "failed to apply the correct analysis under section 1385, subdivision (c)." In sentencing Neal, the court invoked "equity and fairness" to "balance" the exceptional violence of Neal's attack on D.G., her vulnerability, and his potential to commit future violent acts on one side of the scale against the effects of Neal's mental illness, prior victimization, and childhood trauma on "his ability to make appropriate decisions" on the other side, and concluded there was no "good cause" to dismiss the great bodily injury enhancement. Although the court did not speak in terms of "the furtherance of justice" (§ 1385, subd. (c)(1)), its references to "equity and fairness" and "balanc[ing]" of aggravating and mitigating circumstances show the court applied the correct legal standard and considered permissible factors. (See *People v. Ponder* (2023) 96 Cal.App.5th 1042, 1052–1053, review granted Jan. 10, 2024, S282925 [no abuse of discretion in refusing to dismiss enhancement when court " 'thought about the equities,' " considered mitigating and aggravating factors, and "gave great thought" on whether to dismiss it]; *Ortiz, supra*, 87 Cal.App.5th at p. 1097 & fn. 6, review granted [in exercising discretion under § 1385, subd. (c) court may consider nature and circumstances of current crime and defendant's background, character, and prospects].) We thus conclude Neal has not met his burden to establish an abuse of discretion. (See *Carmony, supra*, 33 Cal.4th at pp. 376 [party attacking discretionary sentencing decision must show it was irrational or arbitrary]; *Gonzalez, supra*, 103 Cal.App.5th at p. 225 [trial court abuses its

13

discretion when it considers impermissible factors or applies wrong legal standard].)

B.      *Imposition of Middle Term on Assault Conviction*

Neal next challenges the trial court's imposition of the middle prison term on his conviction of assault by means of force likely to produce great bodily injury. He argues that because his childhood trauma was a contributing factor to the attack on D.G., there was a presumption in favor of imposition of the lower term that could be overcome only if the court found "the aggravating circumstances [so] outweigh[ed] the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6)(A).) Neal contends the court was unaware of the presumption and failed to conduct the balancing of aggravating and mitigating circumstances needed to overcome it. He claims that because the record does not clearly indicate the court would have imposed the middle term had it known of the presumption, remand for resentencing is warranted. We disagree.

Neal forfeited this claim of error. The general rule is that a party who does not challenge a discretionary sentencing decision in the trial court may not complain on appeal that the court failed properly to make or to articulate its reasons for that decision. (*In re Sheena K.* (2007) 40 Cal.4th 875, 880–881; *People v. Tilley* (2023) 92 Cal.App.5th 772, 778 (*Tilley*).) Neal concedes he did not mention the statutory presumption in favor of imposition of the lower term in his sentencing memorandum or at the sentencing hearing. He also concedes the trial court had discretion to impose the middle term if it found aggravating circumstances so outweighed mitigating circumstances that imposition of the lower term was not in the interests of justice. Neal's "complaints about the manner in which the trial court exercise[d] its

14

sentencing discretion and articulate[d] its supporting reasons cannot be raised for the first time on appeal." (*People v. Scott* (1994) 9 Cal.4th 331, 356 (*Scott*); accord, *Tilley*, at p. 778.)

Neal argues he did not forfeit his claim of error, because he is challenging the trial court's "misapprehension of its sentencing obligations under section 1170, subdivision (b)(6)," not its exercise of discretion. He alternatively argues that any forfeiture resulted from ineffective assistance of trial counsel, and he should be relieved of the forfeiture and the matter remanded for resentencing because it is reasonably probable the court would have imposed the lower term on the assault conviction had counsel invoked the statutory presumption. We are not persuaded.

Under section 1170, subdivision (b)(6)(A), if the defendant experienced "childhood trauma" that was "a contributing factor in the commission of the offense," the court "shall order imposition of the lower term" unless it "finds that the aggravating circumstances [so] outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice." The statute creates a presumption in favor of imposing the lower term, but the court retains discretion to impose the middle term if it finds imposing the lower term would be contrary to the interests of justice based on its weighing of aggravating and mitigating circumstances. (*People v. Hilburn* (2023) 93 Cal.App.5th 189, 203, 205–206; *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1095.) A defendant is entitled to have a court exercise informed discretion at sentencing. (*People v. Flores* (2020) 9 Cal.5th 371, 431; *People v. Barber* (2020) 55 Cal.App.5th 787, 814 (*Barber*).) If the court was unaware of its discretion, the remedy is to remand the matter for resentencing unless the record clearly indicates the court would have made

the same sentencing decision had it been aware of its discretion. (*Flores*, at pp. 431–432; *Barber*, at p. 814.)

Remand for resentencing is unnecessary in this case. During the sentencing hearing, the court acknowledged Neal had experienced childhood trauma that led to anxiety, impulsive behavior, and poor decision making, and found those factors contributed (though not substantially) to his attack on D.G. Trial counsel relied on that contribution in asking the court to dismiss the great bodily injury enhancement and to grant him probation or, if it did not dismiss the enhancement, to impose the lower prison term. In denying those requests and imposing the middle term plus the enhancement, the court told Neal, "It's much more than your attorney is asking for, but I am going to do that." Although neither Neal's counsel nor the court mentioned the statutory presumption in favor of imposition of the lower term, the court clearly knew it was being asked to impose, and could have imposed, the lower term. The court declined to do so despite Neal's lack of criminal history and childhood trauma (Cal. Rules of Court, rule 4.423(b)(1), (3)) because of the viciousness of the attack, the vulnerability of the victim, and concern for public safety (*id.*, rule 4.421(a)(1), (3), (c)). The court thus weighed the pertinent aggravating and mitigating circumstances and decided on the middle term. "Given the detailed reasoning the court put into its decision, which is reflected in the record, we see no purpose in remanding this matter for the court to again exercise its discretion." (*Barber, supra*, 55 Cal.App.5th at p. 814.)

The concurring and dissenting opinion reaches conclusions different from ours on forfeiture and the need for resentencing. We briefly explain why we find its analysis unpersuasive.

16

As to forfeiture, the concurring and dissenting opinion cites *People v. Fredrickson* (2023) 90 Cal.App.5th 984 (*Fredrickson*) and *People v. Panozo* (2021) 59 Cal.App.5th 825.  The *Fredrickson* court's statement an appellant cannot forfeit the benefit of the lower term presumption (*id.* at p. 994, fn. 8) was unnecessary to its decision and, in our view, too broad.  Later cases have found forfeiture of claims that courts did not comply with the statute when the claims were not asserted at sentencing.  (See, e.g., *Tilley, supra*, 92 Cal.App.5th at p. 778; *People v. Achane* (2023) 92 Cal.App.5th 1037, 1043–1047.)  *Panozo*, the only case *Fredrickson* cited in support of its statement on forfeiture, decided forfeiture was "inappropriate" for a sentencing error claim based on the trial court's failure to comply with statutory requirements to make a determination on the existence of a mitigating circumstance and to include the circumstance as one the court expressly considered on the record. (*Panozo*, at p. 840.)  No such failures occurred at Neal's sentencing.  The trial court expressly found Neal's childhood trauma contributed to his commission of the assault on D.G. and expressly considered that trauma as one of the mitigating circumstances it weighed against the aggravating circumstances to conclude imposition of the middle term was appropriate.  Had Neal called the court's attention to the lower term presumption of section 1170, subdivision (b)(6)(A) and what was needed to rebut it, the court could have made express findings on the issue.  "Routine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention." (*Scott, supra*, 9 Cal.4th at p. 353.)  Neal's failure to raise the issue at sentencing forfeited it for appeal.  (*Tilley*, at p. 778.)

As to the need for resentencing, the concurring and dissenting opinion relies on *People v. Salazar* (2023) 15 Cal.5th 416 and *Fredrickson, supra*, 90 Cal.App.5th 984.  In *Salazar*, the defendant was sentenced more than a

17

year before section 1170, subdivision (b)(6)(A) took effect. "When the applicable law governing the defendant's sentence has substantively changed after sentencing, it is almost always speculative for a reviewing court to say what the sentencing court would have done if it had known the scope of its discretionary powers at the time of sentencing." (*Salazar*, at p. 431.) Neal was sentenced more than 20 months after the statute took effect. We thus presume the trial court knew of and applied the lower term presumption unless the record shows the contrary. (*People v. Caparrotta* (2024) 103 Cal.App.5th 874, 905 (*Caparrotta*); *People v. Coleman* (2024) 98 Cal.App.5th 709, 724–725.) The record shows that although Neal did not invoke section 1170, subdivision (b)(6)(A), he requested imposition of the lower term and argued the mitigating circumstance, including his childhood trauma, "vastly outweigh[ed]" the circumstances in mitigation. The trial court did not mention the statutory presumption, but it rejected Neal's request, balanced the aggravating and mitigating circumstances, and decided "it's a mid-term case." On this record, Neal has not shown remand for resentencing is required.

We recently rejected the argument, which the concurring and dissenting opinion seems to embrace, that *Salazar* and *Fredrickson* require a trial court to mention the lower term presumption and to make a finding that it has been overcome before it may impose the middle term when the presumption applies. In *Caparrotta*, we upheld imposition of the middle term even though the trial court never mentioned the presumptive lower term at sentencing. (*Caparrotta, supra*, 103 Cal.App.5th at pp. 905–906.) In doing so, we rejected the contention that *Fredrickson* required the court to state in the language of the statute that it had balanced the aggravating and mitigating circumstances and concluded imposition of the lower term would

18

be contrary to the interests of justice.  (*Id.* at p. 906, fn. 14.)  A sentencing court must state on the record its reasons for selecting a prison term. (§ 1170, subd. (b)(5), (6); Cal. Rules of Court, rule 4.406(b)(3).)  It "must state in simple language the primary factor or factors that support the exercise of discretion"; it need not use "the language of the statute."  (Cal. Rules of Court, rule 4.406(a).)  Where, as here, the court has complied with these requirements, remand for resentencing is not necessary.  (*Caparrotta*, at pp. 905–906; *Barber, supra*, 55 Cal.App.5th at p. 814.)

C.     *Imposition of Concurrent Term on Mayhem Conviction*

Neal's final challenge is to the imposition of a concurrent prison term on the mayhem conviction.  In response to this court's request for supplemental briefing on whether the trial court erred in imposing a concurrent term, Neal contends the court erred and should have stayed execution of the term.  The People contend the court did not err by punishing Neal for both assault and mayhem, because he kicked the victim multiple times and in doing so harbored different intents and objectives.  We conclude Neal is correct.

"An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).)  "[S]ection 654 applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction.  [Citation.]  Whether a course of conduct is indivisible depends upon the intent and objective of the actor.  [Citation.]  If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.  [Citation.]"  (*People v. Perez* (1979)

19

23 Cal.3d 545, 551.) The trial court's express or implied factual finding on whether there was a single criminal act or a course of conduct with a single criminal objective is ordinarily reviewed for substantial evidence, but it is reviewed de novo when the facts are not disputed. (*Id.* at p. 552, fn. 5; *People v. Moseley* (2008) 164 Cal.App.4th 1598, 1603.)

At the sentencing hearing, Neal's counsel and the court mentioned "654 issues," but the court made no express findings on whether section 654 required a stay of execution of a portion of the sentence. Implied in the court's imposition of a concurrent four-year prison term on the mayhem conviction is a finding that Neal had separate objectives in committing the mayhem and the assault. (See *People v. Garcia* (2008) 167 Cal.App.4th 1550, 1565.) The record, however, does not support that implied finding. For purposes of section 654, the conduct at issue was Neal's kicking D.G. in the head six times in a matter of seconds, which Neal admitted doing and which was captured on surveillance video that was played for the jury. In closing arguments, the prosecutor argued the multiple kicks to D.G.'s head established both that Neal maliciously disfigured D.G., as required to find him guilty of the mayhem charge (§ 203), and that he intentionally used against her force likely to produce great bodily injury, as required to find him guilty of the assault charge (§ 245, subd. (a)(4)). The prosecutor argued Neal's objective was "to hurt and kick [D.G] because he was angry that he was pepper sprayed" and "wanted to exact pain on [her]." The prosecutor argued no other criminal objective to the jury. Thus, on this record there is no dispute that the same conduct (the series of six kicks) underlay both charges and was carried out with the same criminal objective (to injure D.G.).

We are not persuaded by the People's argument that based on the multiple kicks to D.G.'s head and the severity of her resulting injuries, "the

trial court reasonably could conclude [Neal] harbored a different intent and objective than mere assault when he participated in the vicious attack." They contend he "had multiple intents and objectives" in kicking D.G. six times, including to separate Castillo from D.G., to immobilize D.G. to facilitate escape, and to retaliate against D.G. for pepper-spraying him. Even if Neal had those three objectives and they were truly separate, the People do not explain how one objective can be attributed to the assault conviction and another to the mayhem conviction, or how some kicks can be attributed to the assault conviction and others to the mayhem conviction. The cases they cite are not on point. Neal's assaultive acts were not "separated by periods of time during which reflection was possible," and did not become "more egregious with each successive [act]" by "pos[ing] a separate and distinct risk to [multiple victims]." (*People v. Trotter* (1992) 7 Cal.App.4th 363, 368 [defendant fired multiple shots at pursuing officer on freeway].) Nor did Neal's attack on D.G. involve "gratuitous violence or other criminal acts far beyond those reasonably necessary to accomplish the original offense." (*People v. Nguyen* (1988) 204 Cal.App.3d 181, 191 [defendant's accomplice shot unresisting victim during robbery].) The attack involved a brief and continuous series of assaultive acts against a single victim, which courts have recognized as an indivisible course of conduct for purposes of section 654. (See, e.g., *People v. Mendoza* (2022) 74 Cal.App.5th 843, 853–856; *People v. Bui* (2011) 192 Cal.App.4th 1002, 1015; *People v. Johnson* (2007) 150 Cal.App.4th 1467, 1473–1474.)

We therefore conclude that because Neal "was convicted of both mayhem and assault based on one attack on one victim" (*People v. Pitts* (1990) 223 Cal.App.3d 1547, 1560), he could be punished for one conviction or the other but not both (§ 654, subd. (a); *Pitts*, at p. 1560). " 'It has long been

established that the imposition of concurrent sentences is precluded by section 654 [citations] because the defendant is deemed to be subjected to the term of *both* sentences although they are served simultaneously.' [Citation.] Instead, the accepted 'procedure is to sentence defendant for each count and stay execution of sentence on certain of the convictions to which section 654 is applicable.' [Citations.] Accordingly, although there appears to be little practical difference between imposing [a] concurrent sentence[ ], as the trial court did, and staying sentence on [one] of the convictions, as [Neal] urges, the law is settled that the sentences must be stayed to the extent that section 654 prohibits multiple punishment." (*People v. Jones* (2012) 54 Cal.4th 350, 353.) To correct the error, we shall modify the judgment to stay execution of the concurrent four-year term imposed on the mayhem conviction. (§ 1260; *People v. Goode* (2015) 243 Cal.App.4th 484, 494.)

## III.

## DISPOSITION

The judgment is modified to impose a stay of execution of the four-year prison term imposed on the mayhem conviction pursuant to section 654, and as so modified, the judgment is affirmed. Upon remand, the trial court is directed to prepare an amended abstract of judgment including the modification and to forward a certified copy to the Department of Corrections and Rehabilitation.


IRION, J.

I CONCUR:


HUFFMAN, Acting P. J.

23

BUCHANAN, J., Concurring and Dissenting.

I concur in the majority opinion except for section IIB on the trial court's failure to apply the presumption in favor of the lower term based on Neal's childhood trauma contributing to his commission of the offenses. (§ 1170, subd. (b)(6)(A).)  On that issue, I dissent.

I disagree with the majority's conclusion that Neal forfeited this issue by failing to raise it in the trial court.  "The statute mandates application of the lower term presumption in the specified circumstances" and a claim that the trial court failed to comply "is not subject to forfeiture."  (*People v. Fredrickson* (2023) 90 Cal.App.5th 984, 994, fn. 8 (*Fredrickson*) [no forfeiture of claim that trial court failed to apply lower term presumption of section 1170, subdivision (b)(6)(B) based on defendant's youth].)  Such a claim "does not challenge the manner in which the trial court *exercised* its sentencing discretion but rather its apparent misapprehension of statutory sentencing obligations."  (*People v. Panozo* (2021) 59 Cal.App.5th 825, 840 [no forfeiture of claim that trial court failed to consider defendant's service-related PTSD as mitigating factor as required by statute].)  Specifically, Neal is arguing that the trial court misapprehended its statutory obligation to apply the lower term presumption based on his childhood trauma.  (§ 1170, subd. (b)(6)(A).)

Regarding the merits, the trial court itself made findings triggering the statutory presumption in favor of the lower term based on Neal's childhood trauma.  (§ 1170, subd. (b)(6)(A).)  As the majority notes: "During the sentencing hearing, the court acknowledged Neal had experienced childhood trauma that led to anxiety, impulsive behavior, and poor decision making, and found those factors contributed (though not substantially) to his attack on D.G."  (Maj. Opn., *ante*, at p. 16.)

This is sufficient to trigger the lower term presumption. Although a "substantial" contribution is required to apply section 1385, subdivision (c)(6)(A) relating to the striking of enhancements, it is not required to trigger the lower term presumption of section 1170, subdivision (b)(6)(A). In contrast to section 1385, subdivision (c)(6)(A), which uses the term "substantially contributed," the lower term presumption of section 1170, subdivision (b)(6) applies if any of the specified circumstances was merely "a contributing factor in the commission of the offense." (§ 1170, subd. (b)(6).) "It seems clear the Legislature's use of 'contributing factor' implies a factor far less significant than one which 'substantially contributed' to the crime." (Couzens et al., Sentencing Cal. Crimes (The Rutter Group 2024) § 12:7, p. 770; see also *ibid*. ["Likely it will be necessary for the court to find the factor had some connection, however slight, in the commission or circumstances of the crime."].)

Based on the trial court's own finding that Neal's childhood trauma at least contributed to the offenses, it was legally required to apply the lower term presumption. (*Fredrickson, supra*, 90 Cal.App.5th at pp. 991–993 [lower term presumption triggered by initial showing that qualifying condition is a contributing factor].) And under the holding of *Fredrickson*, the record must "affirmatively show compliance with the statute" whenever the defendant has made an initial showing that one of the qualifying circumstances was a contributing factor. (*Id*. at pp. 991–992; see also *id*. at p. 993 [initial showing is "sufficient to obligate a trial court to make an express finding regarding the . . . lower term presumption," citing *People v. Bruhn* (1989) 210 Cal.App.3d 1195, 1199–1200 (requiring affirmative indication of compliance with mandatory statutory requirement to consider alternative sentencing for Vietnam veterans "wherever a prima facie showing

2

of eligibility . . . has been made")].)  In other words, we cannot assume compliance with the statute based on a silent record after the defendant has made this initial showing.

The record here contains no such affirmative showing of compliance. Nobody mentioned or cited this statutory presumption at or before sentencing—not defense counsel, not the prosecutor, not the probation officer, and not the trial court.  There was no reference to the lower term presumption in the sentencing briefs or probation report or sentencing hearing.  The trial court also made no finding that the aggravating circumstances outweighed the mitigating circumstances, which would have been required to overcome the presumption in favor of the lower term. (§ 1170, subd. (b)(6).)  Thus, nothing in the record "affirmatively show[s]" that the trial court understood it was required to apply this statutory presumption based on its own finding that childhood trauma contributed to Neal's commission of the offenses.  (*Fredrickson, supra*, 90 Cal.App.5th at pp. 991–992.)[1]  The sentence should therefore be reversed and remanded for a proper exercise of informed discretion applying the mandatory presumption.  (See, e.g., *People v. Ochoa* (2020) 53 Cal.App.5th 841, 853–854 [remand required

---

[1]     The holding of *Fredrickson* is consistent with our own decision in *People v. Caparrotta* (2024) 103 Cal.App.5th 874, 904–906.  There, the trial court made no finding that any qualifying circumstance was a contributing factor in the commission of the crimes, and we also did not find that the defendant had made such an initial showing sufficient to trigger the trial court's affirmative duty to show compliance with the statute under *Fredrickson*.  In a footnote distinguishing *Fredrickson*, we rejected the defendant's argument that a trial court applying the presumption must expressly state that imposition of the lower term would be contrary to the interests of justice.  (*Id*. at p. 906, fn. 14.)  But we did not question the basic holding of *Fredrickson* that the record must affirmatively show compliance with the statute once the defendant makes an initial showing that the lower term presumption applies.

where record was ambiguous concerning court's compliance with statutory obligation to consider youth-related mitigating factors at sentencing].)

I also disagree with the majority that the record clearly indicates the trial court would have sentenced Neal to the middle term even if it had properly applied the statutory presumption in favor of the lower term. The court characterized its sentencing decision as "a difficult decision" that was "not easy for the Court." Although the court found the existence of aggravating factors, it also acknowledged it was "trying to balance that concern with some equity and fairness . . . in terms of his past history and his ability to make appropriate decisions." The court noted Neal had presented evidence he suffered from posttraumatic stress disorder. The court found there was evidence of "childhood trauma for Mr. Neal as it relates to the fact that he is a prior victim of molestation and sexual abuse." The court also found there were "issues of abandonment, which led to his heavy reliance from a very young age on substance abuse and methamphetamine." And the court noted that a month before the offense, Neal "had a significant loss in his life of his own child, his infant, that was to be born, and that apparently was a triggering incident for him." Finally, the court observed that this was Neal's "first serious felony conduct" and declined to impose the upper term because of his "lack of criminal history in the past." In these circumstances, the record does not clearly indicate that the court believed the aggravating circumstances outweighed the mitigating circumstances.

The mere fact that the trial court considered Neal's childhood trauma at sentencing and imposed the middle term is not a clear indication that it would have reached the same result applying the statutory presumption in favor of the lower term. Qualifying childhood trauma is not just an ordinary mitigating factor under the statute; it is a super-mitigant that "*requires* the

4

sentencing court to impose the low term in cases where a qualifying trauma contributed to the offense and permits the sentencing court to depart from the lower term only in specific circumstances." (*People v. Salazar* (2023) 15 Cal.5th 416, 432 (*Salazar*).) This "marked departure" from customary sentencing law (*ibid.*) effectively makes the lower term the default sentence (and the middle term a form of aggravated sentence) when one of the super-mitigants is a contributing factor. Thus, the trial court's decision to impose the middle term—treating Neal's childhood trauma as an ordinary mitigant—does not logically demonstrate that it would have done the same if it had treated his childhood trauma as a super-mitigant transforming the default sentence to the lower term. To the contrary, the trial court's decision not to impose the upper term suggests it did *not* believe the aggravating circumstances outweighed the mitigating circumstances, as required to overcome the lower term presumption. (See *id.* at pp. 430–431 ["If anything, '[b]y selecting the middle term [under the former law], the trial court impliedly found the aggravating factors were not sufficient to warrant imposition of the high term.' "].)

Our Supreme Court has been unequivocal in its application of the "clear indication" standard to determine whether a remand is necessary for a trial court to apply the lower term presumption when it did not do so at the original sentencing. As the court explained in *Salazar*: "Mere reliance on the length of the original sentence and attendant decisions, such as imposing consecutive sentences, imposing middle or upper term sentences, or declining to strike enhancements, is not sufficient to provide a clear indication of what a sentencing court might do on remand if it had been fully aware of the scope of its discretionary powers." (*Salazar, supra*, 15 Cal.5th at p. 431.) Even more recently, the Supreme Court has suggested that this "clear indication"

5

standard requires some "kind of definitive statement[]" by the trial court that "clearly indicate[s] it would not impose a lesser sentence under any circumstances." (*People v. Lynch* (2024) 16 Cal.5th 730, 777.) There is no such definitive statement in this record.

As in *Salazar*, nothing in the record clearly indicates that the trial court would have found the presumption in favor of the lower term to have been overcome if it had properly understood and exercised its informed discretion under the statute. Accordingly, I would reverse the sentence and remand the matter for resentencing.


BUCHANAN, J.

6